# SUPREME JUDICIAL COURT

FOR THE

COUNTY OF BRISTOL, OCTOBER TERM 1869,
AT TAUNTON.

PRESENT:

Hon. REUBEN A. CHAPMAN, CHIEF JUSTICE.
Hon. HORACE GRAY, JR.,
Hon. JOHN WELLS,
Hon. SETH AMES,               } JUSTICES.
Hon. MARCUS MORTON,

ELNATHAN COOMBS *vs.* NEW BEDFORD CORDAGE COMPANY.

The fact that, very near where a workman is voluntarily employed in a manufactory, machinery not connected with his work is in motion, the dangerous nature of which is visible and constant, is not conclusive that he has taken on himself the risk of being injured by it, in modification of the implied contract of his employer to provide for him a reasonably safe place in which to do his work; and if, through inattention to the danger, he meets with such an injury while doing his work, and sues his employer therefor, the questions whether he met with it with due care on his own part, and by reason of the neglect of his employer to give him suitable notice of the danger, are for the jury; and the facts of his youth and inexperience, and the directions previously given to him by agents of the employer about the manner of doing the work, are to be considered upon the question of due notice; but the facts that the cost of covering the dangerous machinery with a box would have been slight, and that it was so covered soon after the accident, are immaterial.

Evidence that a boy less than fourteen years old and unacquainted with machinery, after being employed in a cordage factory only one day, and then at a hemp-carding machine by

the side of which there was no other such machine, and never having been in a similar employment before, was set to work by his employer in a room where the noise was two or three times as loud as in railroad cars, at another hemp-carding machine where his work required his constant attention and his duty was to break off the ribbon of hemp at stated times by taking it in both his hands and drawing them apart in a manner in which he had been instructed; that by the side of this machine was a similar machine in motion, the gearing of which was unguarded but was in plain view, was situated by the side and somewhat in the rear of the place where he would properly stand in doing his work, and so situated that in drawing his hands apart to break off the hemp his left hand would be brought very near to it; that no one pointed out this gearing to him, or cautioned him in regard to it; and that, while standing in his proper place, attending to his work and breaking off the hemp in the manner described, his hand was caught in this gearing and injured; will warrant a jury in finding that he was manifestly incapable of understanding and appreciating the danger to which he was exposed by the gearing or manifestly incapable of performing the work there with safety, and that his employer was guilty of negligence in setting him to work in that place without proper and reasonable precautions that he should be so informed and instructed in regard to his work there, and the danger to which he would be exposed, as to enable him, with proper care and attention on his part, to avoid that danger.

No exception lies to the refusal of a ruling framed upon the assumption of the credibility of the testimony of particular witnesses to a point on which other testimony is conflicting.

TORT in the plaintiff's name by his next friend. Writ dated March 30, 1867. The declaration was as follows: " And the plaintiff says he was employed by the defendants, and, being then of the age of fourteen years, was by the defendants imprudently, negligently and carelessly set to work in their manufactory without any caution or instruction, in an unsuitable and unsafe place, and very near and by certain dangerous, unfenced and unguarded machinery, whereby the plaintiff was exposed to great and unnecessary risks, and risks not required by his employment, and whereby the plaintiff, while employed at his duty as aforesaid, and using due care, was injured, and his hand was caught and drawn into the machinery and destroyed, and the plaintiff was subjected to great pain and suffering for a long time." The answer was a general denial of these allegations, except that the plaintiff was in the defendants' employment and was injured.

At the trial at April term 1868, before *Foster*, J., the plaintiff introduced evidence tending to show that he became thirteen years old on December 22, 1865, and on the morning of Monday, August 12, 1866, went to work with his father's knowledge

in a room in the defendants' ropewalk; that in this room hemp which the defendants were manufacturing was passed through three "breakers" and three drawing machines; that Thomas Whiteside, the overseer, set him to work with James H. Davenport, a boy seventeen years old, at one of the hemp-drawing machines, and told Davenport to teach him to tend it, and Davenport did so; that he was so employed throughout that day, and by the end of the day was able to tend it well; that the next morning he resumed work with Davenport, and after an hour or two was transferred by Alden Macomber, who was overseer when Whiteside was absent, to another hemp-drawing machine in the same room, to work with a boy named Manchester; that the hemp-drawing machines were nine or ten feet long, about three feet wide, and four feet high, had gearing projecting from their sides, and were worked by two persons, and usually by boys, the work on them being considered "boys' work"; that the hemp was put in by one person at one end of the machine, and drawn through it, and issued from the other end in the form of a ribbon, through a spout three or four inches wide, into a movable tin can, set on the floor about six inches below the spout, and attended by the other person, whose duty was to guide the ribbon into the can, and press it down, break it off when the can was full, and then move that can away and set another one under the spout; that there was some difference in construction between the machine on which the plaintiff worked with Davenport and that to which he was transferred, the ribbon being accumulated in a pile on the floor at the first machine when the can was filled, and at the second machine being heaped up on top of the can, but in their general features the two were similar; that their relative situation to other machines was, however, different, the machine on which the plaintiff first worked not being near any similar machine, but the second machine, to which he was transferred, being for some distance parallel with the third such machine, and so situated that the gearing on the side of this third machine was on the left of and near to the person tending the can of the second machine, while on the right of such person there was a

**vacant** space several feet wide; that this gearing was "three feet and a half high from the floor" and consisted of five or six cogwheels playing upon one another, varying in diameter from two inches to a foot, projecting about two inches from the side of the machine, and "all taking up a space of from eighteen to twenty inches"; and that the distance from the spout of the second machine to this gearing was eighteen inches, and the distance between the two machines at the point where they came nearest to each other, eleven inches.

The plaintiff testified that Macomber, when he transferred him to the second machine, said that Manchester would "show him how to tend the machine." He also testified: "The machine was at work when I went to it, and Manchester was at the end where I worked. At the other end was another boy, who went off, and Manchester took his place." "The overseer said Manchester would show me, but he didn't. He told me when the can was full to pass it away. I knew enough to fill the can when the hemp came out, and to break it off." "Manchester told me when the can was full to break off the hemp, pass away the can and get another. I filled one can, and passed it away; and when the second can was full, and I was breaking the hemp off, my hand caught in the gearing of the other machine on the left, that I had nothing to do with." "The gearing of the other machine caught the back of my left hand, drew it in, and ground it there for a minute. Manchester halloed to a boy named Ryley, who was at the can of the machine that caught my hand. He threw off the belt, stopped the machine, ran it back, and I pulled out my hand, which was all ground up." "The two wheels that caught my hand were a little larger than the top of a hat. They stuck out from the side of the machine on which they were, about two inches. Their teeth were half an inch wide. The cog-wheels were in sight; and J could see them when I had nothing to do but look at them but not when I was attending to my work. I never was left-handed." The plaintiff further testified that he had stated all that was told to him when he was set to work.

Asa Coombs, the plaintiff's father, who was a shipwright, testified that, between two and three months after the accident, he visited the ropewalk and Macomber showed him the machine in which the plaintiff's hand was caught; and that at this time the cog-wheels on the side of it were covered with a wooden box, "which made them perfectly harmless"; that it would take about two hours, and might, at the utmost, cost a dollar and a half, to make such a box. He further testified that on April 3, 1868, just before this trial, he visited the ropewalk again, and that at this visit there was no box over the gearing.

James H. Davenport testified that, in tending the spout of hemp-drawing machines, "the place for the boy to stand is right in front of the machine, with the can between him and the machine, so as not to tip it over," and that "there is no knack about breaking off the hemp, and one could learn how in two or three weeks, or two or three days if instructed;" that when he first went to work in the ropewalk he was thirteen years old, and was set to tending the spout of such a machine.

John Davenport testified that he was forty-nine years old, worked in the ropewalk from 1845 till January 1868, and was there when the plaintiff was injured, but did not witness the accident; and further testified: "I have run these drawing frames, (I think, the one where he was hurt,) and have steered the hemp into the cans. You must press the hemp down, or it will run out on each side. It is the boy's or man's duty to keep his hand there constantly. Boys are generally put upon these machines. The hemp is springy, and the stream is about two fingers wide. If you let it run over, you must pick it up and put it in again. Some are handy at breaking off the hemp. A boy after one or two days' practice is not so well qualified to break it off safely as after a longer time. The machine can be stopped when the can is full, by throwing off the belt. Sometimes they stop it, and sometimes not. There is not much knack in breaking the hemp off. It is done by parting the hemp, not by tightening it up. If you grasp it close, you cannot break it off. If you part it a good way off, it is easily done.

(Here the witness parted his hands widely to show how.) A boy tending a drawing machine stands in front of the can and of the machine. This is the proper place. He is obliged to stand there to watch his work. The boy on one machine has no control over the other." On cross-examination he testified: " All the drawing machines are on the same principle. One boy stands behind the machine to feed it, and another in front to guide the hemp coming out into a can. It is light work, and done by a man only in the absence of a boy. When the can is full, the machine can be stopped by the boy tending the ribbon. There is a lever for that purpose, by throwing off the belts on to a loose pulley. On the right hand of the boy tending the plaintiff's machine, there is plenty of space and no danger; on the left, not much space. The wheels are right in plain sight. The hemp draws out like hay, separating at the end of the staple. Whether you stop the machine depends on the amount of hurry; on outside circumstances; on the boy's will."

" The foregoing evidence was all of the plaintiff's case, except testimony as to the extent of the injury. The defendants contended that it would not warrant a verdict against them; first, for want of proof that the plaintiff when injured was using due care ; and secondly, because there was no evidence of fault or negligence on their part for which they could be held liable. The judge withdrew the case from the jury, and reported these two questions for the determination of the full court; if upon the foregoing evidence it would be competent for a jury to render a verdict for the plaintiff which the court would not set aside *toties quoties*, the case to stand for trial; otherwise, judgment to be rendered for the defendants." The argument on this report was had at October term 1868.

*T. D. Eliot & T. M. Stetson*, for the plaintiff. The duty of an employer to provide safeguards to protect the employee from unreasonable risks is set out in *Cayzer* v. *Taylor*, 10 Gray, 274; *Ryan* v. *Fowler*, 24 N. Y. 410; *Paterson* v. *Wallace*, 1 Macq. 748; *Bartonshill Coal Co.* v. *Reid*, 3 Macq. 266; *Webb* v. *Rennie*, 4 Fost. & Finl. 608; *Sweeny* v. *Old Colony & Newport Railroad Co.* 10 Allen, 368; *Curley* v. *Harris*, 11 Allen, 112 ·

*Gilman* v. *Eastern Railroad Co.* 13 Allen, 433. The questions then arise, whether these defendants were negligent in this respect, and if so, whether such negligence caused the injury.

It often becomes necessary for a plaintiff to exclude any inference of negligence on his own part, especially in cases of accidental falls or collisions under circumstances in which attention was his first duty. But inattention which has led to a collision or a fall, if duly accounted for, or if excused or occasioned by the nature of the employment, is no hindrance to a recovery, when the injury is legally imputable to a defect without which the fall would not have occurred or the collision would have been harmless. *Snow* v. *Housatonic Railroad Co.* 8 Allen, 441. *Spofford* v. *Harlow*, 3 Allen, 176. *Johnson* v. *Hudson River Railroad Co.* 20 N. Y. 65. *McIntyre* v. *New York Central Railroad Co.* 37 N. Y. 287. *Pennsylvania Railroad Co.* v. *Ogier*, 35 Penn. State, 60. *Quirk* v. *Holt*, 99 Mass. 164. *Butterfield* v. *Western Railroad Co.* 10 Allen, 532. *Miller* v. *Pendleton*, 8 Gray, 547. Thus attention might be prevented by the darkness of night, or by the duty to couple cars at a particular moment, or, as is contended in this case, to separate hemp. Some early cases have said that a plaintiff's knowledge of the facts imposed on him the risk; but the later cases have stated the correct principle. Knowledge is only one piece of evidence bearing on the question of negligence; and how much it should bear depends on all the circumstances, and is for the consideration of the jury. *Snow* v. *Housatonic Railroad Co.* 8 Allen, 441. *Fox* v. *Sackett*, 10 Allen, 535. *Paterson* v. *Wallace*, 1 Macq. 748. *Clayards* v. *Dethick*, 12 Q. B. 439. *Cowley* v. *Sunderland*, 6 H. & N. 565. *Holmes* v. *Clarke*, Ib. 349; *S. C.* 7 H. & N. 937. This plaintiff was a child only thirteen years old, and could not be considered capable of appreciating the danger. See *Holmes* v. *Clarke* and *Cowley* v. *Sunderland*, above cited, and also *McIntyre* v. *New York Central Railroad Co.* 37 N. Y. 287; *Pennsylvania Railroad Co.* v. *McTighe*, 46 Penn. State, 316; *Connolly* v. *Poillon*, 41 Barb. 366; *Philadelphia & Reading Railroad Co.* v. *Spearen*, 47 Penn. State, 300; *Munn* v. *Reed*, 4 Allen, 431.

The risks of the business did not cause the loss in this case. It was the danger to which the business was exposed by putting other machinery near the place of its prosecution, without due safeguards. The negligence of the defendants was gross, in omitting all appliances for safety in a situation obviously of great and needless exposure to injury. *Cowley* v. *Sunderland*, 6 H. & N. 565. *Chapman* v. *Rothwell*, El., Bl. & El. 168. *Indermaur* v. *Dames*, Law Rep. 1 C. P. 274. *Coupland* v. *Hardingham*, 3 Camp. 398. *Daniels* v. *Potter*, 4 C. & P. 262. *Elliott* v. *Pray*, 10 Allen, 378. *Whirley* v. *Whiteman*, 1 Head, 610. No evidence shows, nor is any claim made by the defendants, that the relative position of the machines was a necessary position. On the right hand of the plaintiff were many feet of unused space ; but on his left hand not much space, and in fact less space than the motions of the hands in separating the hemp required. And even if the relative position of the machines had been necessary, all peril could have been removed by a cheap box. It is found that after the plaintiff's injury such a box was put over the gearing ; which was an admission by the defendants of their own neglect. They cannot explain why they put the box there, except upon principles which show that it was their duty to do so. If they deny they were bound to do so, but say that it was well enough to do so, we reply that an expedient so cheap and so efficient, and which it was well enough to have, it became a duty to have, in a case of danger to life and limb. *Warren* v. *Fitchburg Railroad Co.* 8 Allen, 227. *Miller* v. *Pendleton*, 8 Gray, 547. *Longman* v. *Grand Junction Canal Co.* 3 Fost. & Finl. 736. *Indermaur* v. *Dames*, Law Rep. 1 C. P. 274. *Clarke* v. *Holmes*, 7 H. & N. 937. *Cayzer* v. *Taylor*, 10 Gray, 274. There is no evidence to justify the relative position of the machines by any usage of other mills ; and it is notorious that the general arrangement of all the standard machines of factories is rectangular, giving each operative his whole task in his front, and keeping his attention thus free from outside dangers.

When the defendants took charge of this child, away from his natural protectors, their measure of care over him and for him

was greater than would have been due from them to a person of full age. *Sheridan* v. *Brooklyn City & Newtown Railroad Co.* 36 N. Y. 39. *Miller* v. *Pendleton,* 8 Gray, 547. *Munn* v. *Reed,* 4 Allen, 431. *Philadelphia & Reading Railroad Co.* v *Spearen,* 47 Penn. State, 300. And cases show that, though the rule of law does not change this measure of care, a millowner's duty increases as the introduction of new machines makes protective appliances more and more necessary. *Manley* v. *St. Helen's Canal & Railway Co.* 2 H. & N. 840. *Clarke* v. *Holmes,* 7 H. & N. 937. *Ernst* v. *Hudson River Railroad Co.* 32 How. Pract. 61. The English factory act, which enacts that machinery " near to which children or young persons are liable to pass or be employed, and all parts of the mill-gearing in a factory, shall be securely fenced," and the protection shall not be removed while the parts are in motion, was a legislative declaration of what common judgment fairly requires of millowners. St. 7 & 8 Vict. *c.* 15, § 21. And the English judiciary, in the cases outside of the factory act, heretofore cited, have decided that the claim of the common law is as exigent as that of the statute. By the law of chance, the attention of every workman will wander now and then; and it is not right or reasonable to impose upon him a duty of guarding himself from consequences of such inattention which could be altogether avoided by providing a box or a fence. *Cayzer* v. *Taylor,* 10 Gray, 274. *Palmer* v. *Andover* 2 Cush. 600, 608.

And to the point that the question of negligence is essentially a question for the jury, and especially so in this case, the plaintiff's counsel cited, in addition to cases above cited by them to other points, *Bigelow* v. *Rutland,* 4 Cush. 247; *Ross* v. *Boston & Worcester Railroad Co.* 6 Allen, 87; *Meesel* v. *Lynn & Boston Railroad Co.* 8 Allen, 234; *Reed* v. *Deerfield,* Ib. 522; *Commonwealth* v. *Fitchburg Railroad Co.* 10 Allen, 159; *Stewart* v *Harvard College,* 12 Allen, 58; *Vinton* v. *Schwab,* 32 Verm. 612, *Williams* v. *Clinton,* 28 Conn. 264.

*J. C. Stone,* for the defendants The evidence shows that the duty assigned to the plaintiff was boys' work, to which boys of his age were put when they first entered the factory; that he

did the same kind of work the day before, on a similar machine, and was taught what he was to do, and how to break the hemp, an act of which a single illustration is sufficient to any person of common sense, and which he himself says that he knew enough to do; that the place where he was set to work was the usual place, where the boys before him had done the work under similar circumstances; that if he had done his work properly he would not have hurt himself; that the accident did not happen in consequence of any defect of machinery, but was the immediate and exclusive result of the act of the plaintiff himself in doing his work awkwardly and inattentively; that whatever danger there was to him in the performance of his work was fully exposed, and was appreciable by the commonest observation and intelligence; that it was a danger incident to the work; and that there was plenty of room on his right side, and if he did not choose to break the hemp without throwing out his arms to their farthest extent, (which it was apparent to him he could not safely do if standing directly in front of his machine,) there was nothing to prevent his standing a little on one side of it.

On the facts thus shown, the defendants contend that the injury was not outside of the plaintiff's employment; that just in proportion as the obvious danger was great, in the same proportion was he bound to increase his care; that he had no right to claim space enough in a room full of running machinery to swing his arms freely, and if he swung them purposely or inadvertently he must suffer the consequences; and that he was not in the exercise of due care.

The fact that he was under full age does not affect in any degree his legal rights or obligations. *King* v. *Boston & Worcester Railroad Co.* 9 Cush. 112. *Holly* v. *Boston Gas Light Co.* 8 Gray, 123. *Wright* v. *Malden & Melrose Railroad Co.* 4 Allen, 283. *Callahan* v. *Bean,* 9 Allen, 401. The contrary doctrine of *Lynch* v. *Nurdin,* 1 Q. B. 29, has always been disavowed by this court, and has recently been rejected in England in *Mangan* v. *Atterton,* Law Rep. 1 Ex. 239.

Nor were the defendants negligent. Though it is the duty of an employer to do nothing to unnecessarily endanger the safety of those in his employ, and he is bound to keep in safe repair the instruments by which his business is carried on, and to point out any latent danger attending the work which is known to him, he is only held to the exercise of ordinary care, and is only responsible for gross negligence. *Durgin* v. *Munson*, 9 Allen, 396. In *McMillan* v. *Saratoga & Washington Railroad Co.* 20 Barb. 449, it was held that the defect must be brought to the actual knowledge of the employer. So in *Priestly* v. *Fowler*, 3 M. & W. 1. In all the cases where employers have been held responsible there has been the element of positive defect and want of repair.

Nor can an employee recover from his employer on account of an injury arising from a defect in machinery, if the employee knew of the defect, and continued in the employment. *Assop* v. *Yates*, 2 H. & N. 768. *Williams* v. *Clough*, 3 H. & N. 258. *Seymour* v. *Maddox*, 16 Q. B. 326. *Keegan* v. *Western Railroad Co.* 4 Selden, 175. *Coon* v. *Syracuse & Utica Railroad Co.* 6 Barb. 243. *Dynen* v. *Leach*, 26 L. J. (N. S.) Exch. 221 ; 40 Eng. Law & Eq. 491. *McGlynn* v. *Brodie*, 31 Cal. 376. Especially if the continued use and employment of defective machinery and apparatus exposed the employee constantly and necessarily to danger. *Snow* v. *Housatonic Railroad Co.* 8 Allen, 411. Unless, as in *Cayzer* v. *Taylor*, 10 Gray, 274, and in the cases under the English factory act, the employer had violated a statute requirement. If, therefore, an employee cannot recover if he continues to work with defective machinery with a full knowledge of the defect and the attendant danger, why should he be entitled to recover if he works in a place to which the objection is that there are dangerous surroundings, if those dangers are constantly exposed, and are seen and appreciated by him ?

In short, employers who run machinery are not bound to furnish employees a place to do their work entirely safe against surrounding dangers. If such dangers are not obvious, it is their duty to point them out; but if they are apparent, and the

employee undertakes the work, they enter into the substance of his employment, and he is bound to take cognizance of them. " If a servant works with or near machinery which is unsafe, with the knowledge of its condition, he takes the risk incident to the employment." *Mc Glynn* v. *Brodie*, 31 Cal. 376.

The defendants were under no statute obligation to box or fence their machinery, and there is no evidence of any usage to do so. They were equally bound to provide reasonably for the plaintiff's safety *eundo, morando, rediundo;* but were they bound to fence or box every dangerous piece of machinery which he had occasion to pass when going out and coming in to his work, lest through inattention he might get hurt? They had no reason to suppose or consider that the place where he was assigned to work was so dangerous that such an extraordinary precaution should be adopted; and they had a right to expect that he himself would exercise reasonable and proper attention and prudence against the obvious danger.

HOAR, J. This case presents an extremely interesting question, and one of much practical importance, in relation to the duties and responsibilities of employers to those whom they employ. The arguments of counsel have taken a very wide range, and have brought to our notice a very large mass of authorities, which, though we have examined and considered them as carefully as the nature of the case seemed to require, we do not think it necessary to review in detail.

The leading principles of law upon which the rights of the parties depend are simple and well defined, and have been frequently stated in judicial decisions. Thus it is well settled hat one who enters the service of another takes upon himself the ordinary risks of the employment in which he engages, including the negligent acts of his fellow workmen in the course of the employment. *Farwell* v. *Boston & Worcester Railroad Cc.* 4 Met. 49. *King* v. *Boston & Worcester Railroad Co.* 9 Cush. 112. *Gillshannon* v. *Stony Brook Railroad Co.* 10 Cush. 228. On the other hand, the principle is perfectly established, that an employer is under an implied contract with those whom he employs, to adopt and maintain suitable instruments and

means with which to carry on the business in which he requires their services; and this includes an obligation to provide a suitable place in which the servant, being himself in the exercise of due care, can perform his duty safely, or at least without exposure to dangers that do not come within the obvious scope of his employment. *Cayzer* v. *Taylor,* 10 Gray, 274. *Seaver* v. *Boston & Maine Railroad,* 14 Gray, 466. *Snow* v. *Housatonic Railroad Co.* 8 Allen, 441. *Gilman* v. *Eastern Railroad Co.* 10 Allen, 233, and 13 Allen, 433.

There is another class of cases in which it has been held that, if a person allows a dangerous place to exist in premises occupied by him, he will be responsible for injury caused thereby to any other person entering upon the premises by his invitation or procurement, express or implied, and not notified of the danger, if the person injured is in the use of due care. *Sweeny* v. *Old Colony & Newport Railroad Co.* 10 Allen, 368. *Elliott* v. *Pray,* Ib. 378. *Zoebisch* v. *Tarbell,* Ib. 385. In the first of these cases, the rule is stated by Chief Justice Bigelow in these words : " If a person undertakes to do an act or discharge a duty by which the conduct of others may properly be regulated and governed, he is bound to perform it in such manner that those who are rightfully led to a course of conduct or action, on the faith that the act or duty will be duly and properly performed, shall not suffer loss or injury by reason of his negligence."

It is in the application of these principles to a new state of facts that the difficulty arises; and the case at bar is certainly one that comes very near the line. The plaintiff received the injury of which he complains from his hand being caught in the cogs of a machine, which was running within a foot or two of the place where he was set to tend another similar machine. The work in which he was employed would naturally occasion him to extend his arms and hands in such a manner as to bring his fingers very near to the cogs. But the cogs were in sight, and the danger of getting the fingers into them manifest; and it is argued on behalf of the defendants, 1. that the facts show that the plaintiff did not use due care; and 2. that they were

under no legal obligation to fence or inclose the dangerous machinery, or to protect the plaintiff against a peril which, being visible and permanent, came within the risks which he assumed by entering upon the employment.

Whether it was possible for the plaintiff to have met with the accident from inadvertence or want of acquaintance with the danger of his position, without being chargeable with a want of reasonable care, we think is a question to be submitted to the jury. The facts that he saw or might have seen the machinery in motion, and might have known that it was dangerous to expose himself to be caught in it, are considerations which should be regarded on one side. On the other, some allowance should be made for his youth, his inexperience in the business, and for the reliance which he might have placed upon the direction of his employers. It has been held in other cases that previous knowledge of a danger is not conclusive evidence of negligence in failing to avoid it. *Reed* v. *Northfield*, 13 Pick. 94. *Whittaker* v. *West Boylston*, 97 Mass. 273.

Upon the other question reserved, we have entertained more doubt; but upon a careful examination we are all of opinion that there is sufficient evidence to go to the jury upon that also.

There is no statute of this Commonwealth which requires machinery to be fenced or boxed, as a precaution against accidents; and most of the decisions under the English statute upon the subject have therefore no application. Nor can it be doubted that it is the legal right of every person to carry on a business which is dangerous, either in itself or in his manner of conducting it, if it is not unlawful, and interferes with no right of other persons. The evidence which was introduced to show that the defendants could have guarded their machinery by boxing it, at a very trifling expense, and that they actually did cover it in that way immediately after the accident to the plaintiff, was immaterial. If the plaintiff, being of sufficient age and intelligence to understand the nature of the risk to which he was exposed, and with full notice of the dangerous nature of the service which he undertook, chose to contract to do it, then he assumed the risk which was clearly within the scope of his employment,

and his employer was under no obligation to indemnify him against the consequences. Thus in *Priestly* v. *Fowler*, 3 M. & W. 1, which was an action by a servant against a master for injuries received in consequence of the breaking down of an overloaded van, it was held that the master was not liable, because the fact that the van was overloaded was as well known to the servant as to him. The implied contract to have the machinery in such a safe and proper condition as not to expose the servant to unnecessary risk is the foundation of the master's liability. If the servant, being fully capable of choosing and contracting for himself, and with full notice of the risk which he assumes, chooses to undertake a hazardous employment, to put himself in a dangerous position, or to work with defective or unsuitable tools, machinery, or appliances, no such implied contract arises. As was said by Chief Justice Cockburn in *Clarke* v. *Holmes*, 7 H. & N. 937, " No doubt the master cannot be held liable for injury to the servant within the scope of the danger which both the contracting parties contemplated as incidental to the employment."

The case of *Clarke* v. *Holmes* is one which it is not easy to place upon any very well defined principle. The plaintiff was an adult workman, who went to work with machinery about him which was properly fenced for his protection. It afterward became unfenced, and he knew its condition, and complained of it to his master, who promised that it should be fenced again. He kept on with his work, and was injured. The jury found that his master was negligent, and that he was not; and his action against his master for compensation for his injury was sustained by the court. Chief Justice Cockburn says that " there is a sound distinction between the case of a servant who knowingly enters into a contract to work on defective machinery, and that of one who, on a temporary defect arising, is induced by the master, after the defect has been brought to the knowledge of the latter, to continue to perform his service under a promise that the defect shall be remedied." Mr. Justice Byles observed that, the contract being to work with fenced machinery, when it was broken by the master it might be re-

garded as a species of compulsion. But he added a remark which seems to point to a distinction of more importance in the case we are considering than in the one in which it was made: " Besides, a servant knowing the facts may be utterly ignorant of the risks."

The case most nearly in point, of any which has been brought to our notice, is *O'Byrne* v. *Burn*, 16 Cas. in Court of Session, (2d series,) 1025, cited with apparent approbation in *Bartonshill Coal Co.* v. *Reid*, 3 Macq. 266, and *Same* v. *McGuire*, Ib. 300. It was a Scotch case, in which the plaintiff was a girl employed by the defendant in his clay-mill; altogether inexperienced, having been only nine days in his service, and unaware of the risks from the machinery. The superintendent put her to remove some waste clay while the rollers were in motion, and she was injured; and it was held that she could maintain her action. Lord Cranworth's comment upon it is in these terms: " This might have been quite right. It may be, that, if a master employs inexperienced workmen, and directs them to act under the superintendence and obey the orders of a deputy whom he puts in his place, they are not, within the meaning of the rule in question, employed in a common work." " They are acting in obedience to the express commands of their employer; and if he, by the carelessness of his deputy, exposes them to improper risks, it may be that he is liable for the consequences." 3 Macq. 295. And Lord Chelmsford adds: " It might well be considered that, by employing such a helpless and ignorant child, the master contracted to keep her out of harm's way in assigning to her any work to be performed." Ib. 311.

The case of *Indermaur* v. *Dames*, Law Rep. 2 C. P. 311, furnishes a slight analogy to the present. A gasfitter's man was sent to the defendant's factory to inspect meters, and was hurt by falling down an unfenced shaft. It was held that he was not a mere volunteer, but came upon the premises under such conditions that he was entitled to protection against an unknown danger. Kelly, C. B., said, in delivering the opinion in the exchequer chamber, " If a person occupying such premises enters into a contract, in the fulfilment of which workmen must come

on the premises who probably do not know what is usual in such places, and are unacquainted with the danger they are likely to incur, is he not bound to put some fence or safeguard about the hole, or, if he does not, to give such workmen a reasonable notice that they must take care and avoid the danger? I think the law does impose such an obligation on him."

Upon the new trial of the case at bar, the jury should be instructed that the defendants had the legal right to run their machinery without fencing or boxing it, unless by so doing they exposed persons in their employment, or other persons who came upon the premises by their procurement or invitation, to danger of which they gave no sufficient notice; that if, by the fact that the cogs were in sight, and the danger from them apparent, the jury should be satisfied that the plaintiff had reasonable notice of the peril to which he was exposed, and, understanding it, chose to undertake the employment which exposed him to it, he cannot recover; but that, if, on the other hand, they should be satisfied that the defendants knew or had reason to know the peril to which he would be exposed, and did not give him any sufficient or reasonable notice of it, and if he, without any negligence on his own part, from inexperience, or reliance upon the directions given him, failed to perceive or appreciate the risk, and was injured in consequence, they would be responsible to him in this action. *Case to stand for trial.*

The case was accordingly tried at April term 1869, before *Wells*, J., and, after a verdict for the plaintiff, was again reported for the revision of the full court, substantially as follows:

"Upon the trial at this term, the evidence upon the part of the plaintiff tended to show these facts: In August 1866, the plaintiff, being then under the age of fourteen years, by three or four months, with the knowledge and consent of his father applied to the defendants for employment in their mill or cordage factory. He had never been so employed before that time, having been till then at school. The defendants received him into their employment; and on the first day, Monday, August 12, he was set at work to fill cans with the roping or strands of manila

as it came from the drawing machine, with another boy named Davenport, who was directed to instruct him in the process, and who did so during that day and for a short time on Tuesday morning. The work was, to see that the strands went into the can, to press them down and fill the can; then to break off the strands and remove the can to the place where it was required for the next process, and to set another can under the machine for a repetition of the operation. In the course of the morning or early forenoon of Tuesday, Macomber, the overseer in charge, took the plaintiff to another machine in the same room, and set him to do similar work there. He directed Manchester, a boy who had been doing that work, but who was then taken off in order to attend to the feeding of the machine at its other end, that he should show the plaintiff how to do his work there.

" The machine was not materially different from the one upon which the plaintiff had worked the day before; but the strands were of hemp instead of manila, and parted more easily than the strands of manila, though very little force was required to part either, as they were both of loose untwisted fibre. At the left hand, and near the place where it was proper and necessary for the plaintiff to stand to do his work, there was another drawing machine in operation, driven by the same shaft below the floor, but bearing in the opposite direction from the shaft, and standing parallel to the machine on which the plaintiff worked. Upon the side of that machine was a combination of eleven gears of various sizes, working upon each other with cogs. The two machines at the nearest point were about eleven inches apart; and the distance from the rollers, through which the roping was discharged from the machine upon which the plaintiff worked, to the nearest point in the circumference of the gears, was about eighteen inches. The distance from the extended centre line of one machine to the face of the gearings of the other was about twenty-two inches. The gearings were uncovered, and without any guard, and in plain view; but the position in which a person would properly stand while tending the machine upon which the plaintiff worked would bring the gearings upon his left hand and somewhat to his rear.

" The evidence also tended to show that the mode of breaking off the strand was, either by taking it with both hands and separating the fibres by drawing it apart between the hands, or by taking the strand in one hand and drawing directly back while the other end was held fast in the rollers; that when the machine was stopped the latter mode was usually though not always adopted, but when the machine was in motion it was necessary to do it in the first mode, with both hands; that generally the machines were stopped when the cans were filled; and that there were appendages at each end of the machine for stopping and starting the machine; but that, when the work was behindhand, the ends were sometimes broken off and cans changed without stopping the machine; and there was evidence from which the plaintiff's counsel contended that the work of the machine upon which the plaintiff was employed at the time of the accident was behindhand on that Tuesday morning. It appeared from the testimony of the plaintiff and Davenport, that while the plaintiff worked with Davenport the machine was stopped every time the can was changed; and that it was necessary to stop that machine on account of the manner in which they filled the can, which was, to push it aside when full, and form a coil upon the floor; when the coil was sufficiently large the machine was stopped, the strand parted, and the coil taken up and placed upon the top of the can. It also appeared that while he worked with Davenport the strands were separated by using both hands and parting the strands between the hands.

" The plaintiff testified that when Macomber set him at work upon the other machine on Tuesday he told him that Manchester would show him about his work; and that Macomber told him nothing else; that Manchester told him ' when the can was full, to break off, and keep the girls supplied.' And the plaintiff testified : ' He gave me no directions how to break it off. I broke it by pulling it apart with both hands. I got my hand into the cogs of the other machine.' He also testified that he did not know anything about machinery; that he was standing right behind the can when the accident happened; that he was tending his machine, looking at it; that there was considerable

noise in the mill, two or three times as much as in railroad cars; that he did not stop the machine to break off the strands; that no one told him not to break off the strands without stopping the machine, and no one pointed out the cogs to him, or cautioned him in regard to them ; and that, when he was transferred to the other machine on Tuesday, or. afterwards, no one gave him any instructions in regard to the manner in which he should do the work there; that only two cans were filled after he was so transferred, and in breaking the strand after filling the second can his hand was caught.

" It also appeared that there was no other machine at the side of the place where he worked on Monday; and that, in filling the cans at the machine to which he was transferred on Tuesday, the coil was formed upon the top of the can and not upon the floor, that being the usual mode at that machine.

" There was testimony tending to show that it required constant attention to fill the cans properly and prevent the strands from escaping and falling outside of the can; and also that some of the hemp was found with his hand in the cogs of the machine by which it was caught.

" The defendants called Macomber, who testified that, when he set the plaintiff to work upon the other machine on Tuesday, he pointed out the gearings to him and cautioned him against getting caught there; that he showed him how to fill one can and break off the end, by stopping the machine and drawing the strand directly back with the right hand, the other being fast in the roller; and that he directed Manchester to look after him.

" Manchester testified that he also pointed out the gearing of the other machine near the plaintiff, and cautioned him against coming in contact with it; and also instructed him how to do the work, by filling six cans, and stopping the machine, and breaking off the end in the manner described by Macomber; and that he showed the plaintiff how to stop the machine and start it up again ; that he went to that end of the machine to assist and direct him about the next three cans, which were filled by the plaintiff; and that, in parting the strand upon the third can, the plaintiff threw his left hand round and struck the gears and was caught.

" The plaintiff denied the whole of these statements; **and** there was other testimony both in contradiction and in cor- roboration of the witness Manchester.

" The defendants requested the following instruction : ' If the jury are satisfied that Macomber and Manchester pointed out to the plaintiff the danger from the gearing where he was injured, and cautioned him against it, so that, at the time, he saw it and understood that contact with it would be dangerous, the defendants would not be liable.' I declined to give the in- struction in this form. But I instructed the jury, among other things, that, if this plaintiff could recover, it must be because, from his youth, inexperience and want of capacity to appreciate and avoid the danger, it became the duty of the defendants to take especial precautions for his protection, which they had failed to do; that the plaintiff must show some breach of duty towards him by the defendants ; that, if he was manifestly in- capable of understanding and appreciating the danger to which he was exposed by the gearings, or manifestly incapable of per- forming the work there with safety, there might be a breach of duty on the part of the defendants in placing him in a position where he would be so exposed, or, placing him there, in not giv- ing him such instruction as would enable him, with reasonable care and attention on his part, to do his work there safely ; that, if they found that the defendants were guilty of negligence in either of these respects, they would be liable, if the plaintiff himself was in no fault; that the question was not whether the place was more dangerous than was necessary, or than is usual in similar mills, nor whether it might have been made more safe with slight expense or by reasonable care, but whether, taking the machines as they were, in the places they were in, the de- fendants were guilty of negligence in setting the boy to work in that place without proper and reasonable precautions that he should be so informed and instructed, in regard to his work there, and the danger to which he would be exposed, as to en- able him, with proper attention and care on his part, to avoid that danger. The jury were also instructed fully as to the care required upon the part of the plaintiff. No objections were

made to any of the instructions given to the jury, except by the request for the instructions as above recited.

" The jury returned a verdict for the plaintiff in the sum of $5008.33. After verdict, the defendants moved that the verdict be set aside and a new trial granted, for several reasons, among which were, that the verdict was against the evidence, and against the law as given to the jury upon the trial. I overruled this motion; but, entertaining some doubt as to whether, upon the facts and the testimony in the case, (which are herein stated in full so far as they relate to this question,) the plaintiff had so far shown that the accident occurred without fault or want of due care on his part as to entitle him to retain the verdict in his favor, I report the case for revision by the full court. If the court shall be of opinion that the refusal to give the instruction asked for was erroneous, or that, upon the facts and testimony stated above, the plaintiff ought not to retain his verdict, the verdict is to be set aside and a new trial granted; otherwise, judgment to be entered upon the verdict."

*B. R. Curtis & G. Marston*, for the defendants, argued in substantial conformity with the argument made in the defendants' behalf on the former report; and further substantially as follows:

1. On Monday, the plaintiff was taught to stop the machine before parting the fibre. On Tuesday, he did not stop the machine, but let it run while he was parting the fibre. " It required constant attention to fill the cans properly " while the machine was running. His whole attention being thus absorbed, the accident occurred. But if he had stopped the machine, his attention would not have been thus absorbed. He was therefore careless. If it is contended for the plaintiff that he might have forgotten to stop the machine without want of due care, that depends in part on the nature of the danger. It shows a greater degree of negligence to be oblivious at a given moment of the presence of a great and constant danger, than of a slight and casual danger. And in this case the danger was most serious. Bearing in mind that the burden of showing due care is on the

plaintiff, and that, if he forgot, he has shown no reason **why** he forgot, the verdict is one which he should not retain.

2. The plaintiff contends that the defendants were under a general duty to protect him from peril. But the duty of employers, in this class of cases, is of notice only, not of protection; and by giving notice they discharge themselves from responsibility for the hazards which the employees may afterwards incur. The notice need not even be oral. What the duty was, was decided at the former stage of the case; at which the court said that the notice might consist in the fact that the cogs were in sight and the danger from them apparent. If the defendants gave due notice in this case, their whole duty was performed; and if then, whether with or without due care on his part, the plaintiff met with an injury, they are not responsible.

3. In this view of the case, the instruction requested by the defendants concerning the testimony of Macomber and Manchester was pertinent and reasonable. If, under the direct notice which the plaintiff had from them, he took on himself the employment, he took on himself the risks. And the defendants have a right to assume that, if the request had been complied with, the verdict would have been in accordance with their testimony.

4. The instruction, given to the jury, on the assumption that they might find that the plaintiff was manifestly incapable of understanding and appreciating the danger to which he was exposed, was unwarrantable. It must have exercised considerable influence on the jury upon the question of the degree of the plaintiff's due care. But one looks in vain in the report for any testimony which shows incapacity on the plaintiff's part, either of observation or of understanding. Therefore no different standard of care should be set up as to him on account of his youth, than would be applied to a laborer of full age.

And besides cases cited at the former stage of the case, there were now cited for the defendants, *Butterfield* v. *Western Railroad Co.* 10 Allen, 532; *Trow* v. *Vermont Central Railroad Co.* 24 Verm. 487, 493; *Rutgers* v. *Lucet*, 2 Johns Cas. 92,

**96**; *Hartfield* v. *Roper*, 21 Wend. 615; *Willetts* v. *Buffalo & Rochester Railroad Co.* 14 Barb. 585 ; *Rood* v. *New York & Erie Railroad Co.* 18 Barb. 80; *Railroad Co.* v. *Aspell*, 23 Penn. State, 147 ; *Boland* v. *Missouri Railroad Co.* 36 Missouri, 484 ; *Callahan* v. *Warne*, 40 Missouri, 131 ; *Tracy* v. *Wood*, 3 Mason, 132; *Ohrloff* v. *Briscall*, Law Rep. 1 P. C. 231; *Cotton* v. *Wood*, 8 C. B. (N. S.) 568; *Smith* v. *Great Eastern Railway Co.* Law Rep. 2 C. P. 4; *Daniel* v. *Metropolitan Railway Co.* Law Rep. 3 C. P. 591; *Hutchinson* v. *York, Newcastle & Berwick Railway Co.* 5 Exch. 343; *Stubley* v. *London & Northwestern Railway Co.* Law Rep. 1 Ex. 13; *Siner* v. *Great Western Railway Co.* Law Rep. 4 Ex. 117.

*T. D. Eliot & T. M. Stetson*, for the plaintiff, in addition to cases cited at the former stage of the case, cited *Polley* v. *Lenox Iron Works*, 4 Allen, 329, 333 ; *Denny* v. *Williams*, 5 Allen, 1, 4 ; *Forsyth* v. *Hooper*, 11 Allen, 419 ; *Banfield* v. *Whipple*, 14 Allen, 13, 14; *Laber* v. *Cooper*, 7 Wallace, 565 ; *Lovett* v. *Salem & South Danvers Railroad Co.* 9 Allen, 557, 561 ; *Blake* v. *Sawin*, 10 Allen, 340, 344; *Carter* v. *Towne*, 98 Mass. 567 ; *Fogg* v. *Nahant*, Ib. 578; *Gaynor* v. *Old Colony & Newport Railway Co.* 100 Mass. 208 ; *Birge* v. *Gardiner*, 19 Conn. 507 ; *Johnson* v. *Hudson River Railroad Co.* 20 N. Y. 65 ; *Wolfkiel* v. *Sixth Avenue Railroad Co.* 38 N. Y. 49; *Mangam* v. *Brooklyn Railroad Co.* Ib. 455 ; *Jetter* v. *New York & Haarlem Railroad Co.* 39 N. Y. 154 ; *Castle* v. *Duryee*, Ib. 169 ; *Cook* v. *New York Central Railroad Co.* 3 Keyes, 476 ; *Smith* v. *O'Connor*, 48 Penn. State, 218; *Davies* v. *England*, 10 Jur. (N. S.) 1235; 33 L. J. (N. S.) Q. B. 321; *Coleman* v. *Southeastern Railway Co.* 4 H. & C. 699; *Grizzle* v. *Frost*, 3 Fost. & Finl. 622.

GRAY, J. The rulings and instructions at the second trial of this case appear to us to have been in strict conformity with the law, and with the former opinion of the full court.

In that opinion, the general principles were fully recognized and asserted, that any person who allows a dangerous place to exist on his premises is responsible for an injury caused thereby to any other person who enters on the premises by his invitation or procurement, in the use of due care and without notice of

the danger; that an employer is under an implied contract with his servant to find suitable instruments and means of carrying on the business, and a suitable place in which the servant, himself exercising due care, may perform his duty without exposure to dangers not coming within the obvious scope of his employment; and that the implied contract to have the machinery in such a safe and proper condition as not to expose the servant to unnecessary risk is the foundation of the master's liability.

In applying these principles to the present case, it was said that " if the plaintiff, being of sufficient age and intelligence to understand the nature of the risk to which he was exposed, and with full notice of the dangerous nature of the service which he undertook, choose to contract to do it," he assumed all such risks as were clearly within the scope of his employment, and no implied contract could arise on the part of the master to indemnify him against the consequences of such risks; and " that if, by the fact that the cogs were in sight, and the danger from them apparent, the jury should be satisfied that the plaintiff had reasonable notice of the peril to which he was exposed, and, understanding it, chose to undertake the employment which exposed him to it, he cannot recover; but that if, on the other hand, they should be satisfied that the defendants knew or had reason to know the peril to which he would be exposed, and did not give him any sufficient or reasonable notice of it, and if he, without any negligence on his own part, from inexperience, or reliance upon the directions given him, failed to perceive or appreciate the risk, and was injured in consequence, they would be responsible to him in this action." And the question of the defendants' negligence in this respect was ordered to be sub mitted to the jury.

The notice which the defendants were bound to give the plaintiff of the nature of the risks incident to the service which he undertook must be such as to enable a person of his youth and inexperience in the business intelligently to appreciate the nature of the danger attending its performance. The question indeed on this branch of the case is not of due care on the part of the plaintiff, but whether the cause of the injury was one of

which he knowingly assumed the risk, or one of which, by reason of his incapacity to understand and appreciate its dangerous character, or the neglect of the defendants to take due precautions to effectually inform him thereof, the defendants were bound to indemnify him against the consequences. But in determining this question, it is proper and necessary to take into consideration, not only the plaintiff's youth and inexperience, but also the nature of the service which he was to perform, and the degree to which his attention, while at work, would need to be devoted to its performance. The obligation of the defendants would not necessarily be discharged by merely informing the boy that the employment itself, or a particular place or machine in the building or room in which he was set to work, was dangerous. Mere information in advance that the service generally, or a particular thing connected with it, was dangerous, might give him no adequate notice or understanding of the kind and degree of the danger which would necessarily attend the actual performance of his work.

The instructions given were carefully framed, and well adapted to impress the true distinctions upon the minds of the jury. The jury were expressly told that the question was not whether the place was more dangerous than was necessary, or than is usual in similar establishments, nor whether it might have been made more safe by reasonable care ; that the only ground on which the plaintiff could recover was, that because of his youth, inexperience and want of capacity to appreciate and avoid the danger, it was the duty of the defendants to take especial precautions for his protection, which they had failed to do ; and that, if he was manifestly incapable of understanding and appreciating the danger to which he was exposed by the gearings, or manifestly incapable of performing with safety the work at the place where he was put to do it, there might be a breach of duty on the part of the defendants in placing him in a position where he could be so exposed, or placing him there without giving him such instruction as would enable him, with reasonable care and attention on his part, to do his work there safely.

The plaintiff had introduced evidence tending to show that at the time of the injury he was less than fourteen years old and had been in the defendants' service but a single day; that he knew nothing about machinery, and had never been in a similar employment before; that his work consisted in filling cans with strands of hemp, poured out in a continuous stream from a drawing machine, which required his constant attention, in a room containing many such machines, and in which the noise was two or three times as loud as in the railroad cars; that he had to see that the strands went into the can, press them down and fill the can, and then break off the strand and remove the can to the place where it was required for the next process, and set another can under the machine for the repetition of the operation; and that he had been instructed, and in the condition of the work at his machine at the time it was necessary, to break off the strand by taking it in both hands and separating the fibres by drawing it apart between the hands, which, as was said by Mr. Justice Hoar in delivering the former opinion, "would naturally occasion him to extend his arms and hands in such a manner as to bring his fingers very near to the cogs" of another drawing machine, also in full operation, in plain view indeed, but without any guard, and by the side and somewhat in the rear of the place in which the plaintiff would properly stand in tending his machine — thus producing a danger which had not existed in the place where he had worked on the single previous day of his employment in the defendants' service, and which, as he testified, no one had pointed out to him or cautioned him in regard to; and that, while standing in his proper place, tending and watching his machine, and in breaking off the strand with both hands after filling the second can, his left hand was caught in the cogs of the next machine and badly injured.

This evidence, if believed by the jury, warranted them in finding, in the words of the instructions given, that " he was manifestly incapable of understanding and appreciating the danger to which he was exposed by the gearings, or manifestly incapable of performing the work there with safety," and that,

"taking the machines as they were, in the places they were in, the defendants were guilty of negligence in setting the boy to work in that place without proper and reasonable precautions that he should be so informed and instructed, in regard to his work there, and the danger to which he would be exposed, as to enable him, with proper attention and care on his part, to avoid that danger."

The duty of providing suitable machinery to carry on their business, and a suitable place for the plaintiff to work in, including giving him full notice of the nature of the risks attending the service, was a responsibility resting upon the defendants, which they could not throw off by delegating it to a foreman or to other workmen. *Gilman* v. *Eastern Railroad Co.* 13 Allen, 433, 441. Smith on Master & Servant (3d ed.) 212. In *Grizzle* v. *Frost*, 3 Fost. & Finl. 622, a girl under sixteen years of age, who had never been in such employment before, entered into an employment precisely like that of the present plaintiff. She testified that she received no particular instructions; that, a few days after she entered into the employment, the defendants' foreman, observing that some of the hemp dropped from the machine, told her to pick it up and put it between the rollers without having them stopped, in a manner which he showed her, and which made it necessary to bring the fingers very close to the rollers, which was admitted to be very dangerous; and that two or three days afterwards, while doing exactly as she had been directed, her fingers were caught by the revolving rollers. Chief Justice Cockburn instructed the jury, that, "if the owners of dangerous machinery by their foreman employ a young person about it quite inexperienced in its use, either without proper directions as to its use, or with directions which are improper and which are likely to lead to danger, of which the young person is not aware, and of which they are aware; as it is their duty to take reasonable care to avert such danger, they are responsible for any injury which may ensue from the use of such machinery."

Upon the question of due care on the part of the plaintiff, the state of facts which the evidence introduced by him at the

second trial tended to show made quite as favorable a case for him as that which was held upon the first argument proper to be submitted to the jury. The case is within the same principle as *Hackett* v. *Middlesex Manufacturing Co.* 101 Mass. 101, 104, in which this court said: " It can hardly be expected that workmen will not move a little while they are engaged about their work ; and if they are exposed to danger from defective machinery, of which they are unaware, the question is, whether they were in a position such as, without carelessness, they might be reasonably and naturally expected to occupy, and not improper for a person so employed. This is a question of fact, under all the circumstances of the case, and not of law." In determining whether there was sufficient evidence upon this question to be submitted to the jury, it is hardly necessary to observe that the conflicting testimony introduced by the defendants cannot be taken into consideration.

The refusal of the presiding judge to give the instruction requested affords no ground for granting a new trial ; because he was not bound, when the testimony was conflicting, to give an instruction based upon an assumption of the credibility of particular witnesses ; and because the subject of the request was fully and accurately covered by the instructions given. *Bailey* v. *Bailey,* 97 Mass. 373. *Laber* v. *Cooper,* 7 Wallace, 565.

*Judgment on the verdict for the plaintiff.*