OLIVER EVANS, BY AUSTIN R. EVANS, HIS GUARDIAN, APPELLANT, *v.* THE LAKE SHORE AND MICHIGAN SOUTHERN RAILWAY COMPANY, RESPONDENT.

*Employe — hazards incident to his duties — minority — how it affects the question of negligence.*

An employe who contracts for the performance of hazardous duties assumes such risks as are incident to their discharge, and also the risks and perils incident to the use of the machinery and property of the employer as they were at the time of the employment, so far as such risks were apparent.

Where, in an action brought by an employe to recover damages for injuries sustained by him under such circumstances, while discharging the duties of his office, it appears that he was of sufficient age and intelligence to understand fully the duties of his employment, as well as its dangers, the question as to the liability of his employer is not affected by the fact that he is a minor.

MOTION by plaintiff for a new trial, upon exceptions ordered to be heard in the first instance at General Term after a nonsuit directed at the Circuit. The case was tried at Chautauqua Circuit in January, 1876, and a nonsuit ordered.

The plaintiff was a brakeman in the employ of defendant, and the action is to recover damages for personal injuries happening on the 12th May, 1873, and resulting in the loss of his arm. He was then about nineteen years old and had been in such employment upon

freight trains of the defendant for about two months. On the evening of that day, between eight and nine o'clock, at the village of Dunkirk, the train to which plaintiff was attached started to get for the train, other freight cars that were on a branch. The plaintiff, at the direction of the conductor, under whose authority he was, got upon the engine with the conductor, the latter telling him, as plaintiff testifies, "that as soon as he got by Center street, when we got the signal from the hind end, he would cut in two, and him and I would go and get the cars." The engineer and fireman were also on the engine. The train was a long one, about twenty-five cars. After they got to Center street, plaintiff, as he says, thought the train was broken in two by the way they were running, and looked out to see if the caboose on the rear end of the train was coming. For that purpose he leaned out about two feet at the gangway between the cab and the tender, and as he did so, was struck by the target on the post of the switch just beyond Center street, and knocked off on to some railroad iron which lay by the track near the post, and his arm was run over.

The night was dark and cloudy and the train going at the rate of about eight miles an hour, and the track there to the rear end of the train was straight. They were not intending to use the switch at this target. The target was arrow-shaped, had a light on it, and when the switch was not in use it was at right angles to the track and the end of the target about ten inches from the side of the engine.

It does not appear to have been the duty of the plaintiff to look out for the rear end of the train or for the signals there, and his position ordinarily was upon the top of the train.

The plaintiff, in the course of his employment, was familiar with this switch; had passed it, and often seen it worked, and was then looking out for it, and supposed they had passed it, having mistaken some colored lights in a drug store near Center street, and which they had passed, for the light on the post. As he says, he looked to see if he could see it, to see if there was any thing in the way, saw a light he thought was that, then leaned out and was struck. He was not directed by the conductor to look out. The engine and tender were to cut loose when they got the train started enough so that they thought it would run over the crossing at Center street,

The target had not been changed during the employment of plaintiff.

At the close of plaintiff's case the defendant moved for a nonsuit on the ground that no negligence of defendant was shown; that plaintiff was himself negligent, and that plaintiff was familiar with the fact that made the place in question a dangerous one, and therefore assumed the risk in his employment.

The motion was granted on the last ground.

*Le Roy Andrus*, for the plaintiff.

*A. P. Laning*, for the defendant.

MERWIN, J.:

The claim of negligence against the defendant in this case, is based on the fact that the target on the switch post was located in such a position that it became dangerous, and that by means of this the plaintiff was injured. This target had not been changed during plaintiff's employment and plaintiff had become familiar with its position, had often passed it and had seen it used frequently. The question, therefore, arises, whether the danger arising from this was one of the dangers assumed by plaintiff, as incident to his employment.

In *Gibson* v. *Erie Railway Company* (63 N. Y., 449) the plaintiff's intestate was freight conductor in defendant's employ. As the train started he caught hold of a passing car and began to climb up to the top by the ladder at the side, and was struck by the projecting roof of the depot and killed. The roof was two feet nine inches from the top of the car. The roof had been the same for twenty years and deceased had been in the defendant's employ for seven years, and over the road daily. His usual place between stations was in the caboose, and there was no evidence that it was a part of his duty as conductor to get on top of the cars, or that his doing so at the time of the accident had any necessary connection with his duties. It was held that the risk from the roof was assumed by the deceased when he entered the employment of defendant, he being familiar with the place, and the peculiar character of the roof being as patent to him as to any of defendant's officers; also, that there was contributory

negligence, it not appearing that what deceased did had any neces sary connection with his duties as conductor.

The case at bar is quite analogous to the Gibson case, and I think controlled by it.   Here the plaintiff was familiar with the target, the danger, if any, was patent, the plaintiff had seen the switch used, passed it daily, its dangerous character seems to have been in his mind at the time, and he thought he had passed it. ˙ He mistook other lights for the one on the target, and then leaned out and the injury happened.   It is suggested by plaintiff's counsel that actual knowledge of the dangerous character of the target was not shown in plaintiff.   If by actual knowledge is meant experimental knowledge, that is not shown.   Nor was it in the Gibson case. Plaintiff, however, must have known of the nearness of the target to the track or cars.   The rule is, that an employe who contracts for the performance of hazardous duties assumes such risks as are incident to their discharge, and also the risks and perils incident to the use of the machinery and property of the employer as it was at the time of the employment, so far as such risks were apparent. (*Gibson Case, supra; Owen* v. *N. Y. C. R. R. Co.*, 1 Lansing, 108; Wharton on Negligence, § 214.)

Within this rule the nonsuit was properly granted.

It is further claimed by plaintiff that the minority of plaintiff is an element in his favor distinguishing this from the general rule. There is no dispute but that plaintiff was of sufficient age and intelligence to understand fully the duties of his employment, as well as its dangers.   That being so, his minority does not affect the question.   (*King* v. *The Boston and W. R. R.*, 9 Cush., 112; *Coombs* v. *New Bedford Cordage Co.*, 102 Mass., 572, 585; Whart., § 216.)

The motion for new trial should be denied and judgment ordered for defendant on the nonsuit.   So ordered.

Present — TALCOTT, P. J., SMITH and MERWIN, JJ.

Motion for new trial denied, and judgment ordered for defendant on nonsuit.