JOHN L. BECKHAM, ADMINISTRATOR, &c., v. GEORGE R. HILLIER AND FRANCIS A. MOORE.

A youth sixteen years old was employed to manage a cutting-machine, in the running of which it was occasionally necessary to displace and replace the belt by which power was communicated from a revolving shaft to the machine. He had run such a machine for several months before, and was told to be careful in replacing the belt, because there was danger of his being caught in it, and was directed always to call some one to assist him in the operation who might hold the belt in place on the machine while he stood behind the shaft and adjusted the belt upon the driving-wheel. The observance of this precaution materially lessened the risk. On one occasion, although assistance was within call, he attempted to replace the belt alone, without asking aid, and was caught in the belt and killed. *Held*, that he was guilty of contributory negligence, and that his representative could not maintain an action for damages.

On certified case.

Argued at November Term, 1884, before BEASLEY, CHIEF JUSTICE, and Justices DIXON, REED and MAGIE.

For the plaintiff, *Chas. C. Black*.

For the defendants, *W. A. Lewis* and *Gilbert Collins*.

The opinion of the court was delivered by

DIXON, J. The plaintiff is the administrator of Daniel Beckham, and sues to recover damages resulting from his death.

· Daniel Beckham was a youth about sixteen years old, employed by the defendants to manage a machine for cutting roots in the manufacture of drugs. In April, 1883, he was caught in the belt by which the machine was run, and killed. The plaintiff claims that the accident was caused by the improper character of the machinery; the defendants insist that the negligence of the decedent contributed to the disaster.

The plaintiff having obtained a verdict, the defendants seek to have it set aside.

The accident occurred about five o'clock in the evening, in a room in which were two machines moved by belts over a single shaft, one for cutting roots, the other for crushing them. The former was under the control of Beckham, the latter of James E. Sheridan, and these two were working in partnership at piecework, receiving so much per pound for crushed material and dividing the earnings. They were alone in the room when Beckham was killed; both machines were idle, and Sheridan sat at the crusher mending his belt, with his back to the cutter. Beckham had stood near, watching him, then had walked away toward his own machine, and in a minute Sheridan heard a cry, looked round, and saw Beckham being whirled in the belt of the cutter against the rafters of the ceiling. When Sheridan had last noticed that belt it hung motionless, or nearly so, from the revolving shaft to the floor. To start the machine it was necessary first to put the belt upon the pulley of the cutter, then, standing on a barrel or other elevation, to slip the belt, with the hand or a stick, upon the driving-wheel of the shaft. Whether Beckham, when caught in the belt, was endeavoring to start his machine, does not appear by any direct evidence, and the case is silent as to some conditions which probably existed and might shed light upon this question, but the plaintiff contends that he was so engaged, and that if the machine had been supplied with a loose pulley, so that the belt need not have been thrown off the driving-wheel to stop the machine, or if there had been a belt-shifter to replace the belt, the accident would not have occurred.

Admitting the plaintiff's hypothesis to be true, it nevertheless appears that the negligence of the decedent contributed to his death, and should defeat the verdict now under review.

Although the plaintiff's intestate was still a minor, he had attained years of discretion, when he became chargeable with the exercise of due care. Such care is not, indeed, that required from persons of full age, but is to be ascertained with reasonable regard to the ordinary conditions attendant upon his years. When, however, the standard of due care has been thus determined, the rule which makes contributory negligence in the party injured a defence against an action for damages arising from the defendant's want of care, applies to the minor as well as to others. *Telfer* v. *Northern R. R. Co.*, 1 *Vroom* 188. Minor servants also are held to assume, by their contract of employment, those ordinary risks of their service which are obvious to them or have been pointed out in a manner suited to the comprehension of their youth and inexperience. They cannot ignore the dictates of common prudence or the instructions of their superiors to guard themselves from these apparent dangers, and charge the consequences upon their employers. *Coombs* v. *New Bedford Cordage Co.*, 102 *Mass.* 572; *Sullivan* v. *India Manufacturing Co.*, 113 *Mass.* 396; *Curran* v. *Merchants' Manufacturing Co.*, 130 *Mass.* 374; *De Graff* v. *N. Y. C. & H. R. R. R. Co.*, 76 *N. Y.* 125.

The undisputed testimony before us is that Beckham had worked on a machine of the same character as that at which he was killed for several months; that he had been in the habit of adjusting the belt to start the machine, and had been told to be careful in so doing because there was danger of being caught in the belt, and that he had been instructed always to call some one to his assistance who might hold the belt in place upon the pulley while he stood behind the shaft and put the belt upon the driving-wheel. This method of adjustment materially lessened, if it did not practically remove, the risk of the operation to one exercising ordinary care. It relieved him from the necessity of diverting his attention from

Beam v. Paterson.

the driving-wheel to the pulley, thus enabling him to concentrate his thoughts upon the point of danger, and it secured the presence of some 'person who, in case of accident, might instantly displace the belt and terminate its power. We thus perceive that the decedent was expressly informed of the source and general character of the risk, and of the means by which it might be, in great measure, obviated. At the time of the disaster there was nothing to hinder his observance of the instructions which he had received, for there was no reason to hasten the starting of the machine, and Sheridan was at hand presumably ready to respond to his call. Beckham, however, did not ask for aid, but alone attempted to adjust the belt. In so doing we think he acted at his own peril. Even if, as is claimed, he had not been apprised of the exact nature of the hazard, yet he knew that the operation was dangerous, and his disregard of the precautionary direction, manifestly intended for his greater security, was culpable negligence, which relieved the defendants from responsibilty to him or his representatives for the consequences.

If Beckham was not attempting to place the belt upon the pulley, then it does not appear how the alleged defects in the machinery could have caused the accident or how he could have become entangled in the belt, without carelessness.

We advise the Hudson Circuit to grant a new trial.