McDERMOTT v. THE HANNIBAL & ST. JOSEPH RAILROAD COMPANY, *Appellant*.

1. **Master and Servant**: BURDEN OF PROOF. The law presumes that the master exercises care in the employment of his servants, and the burden is upon him who alleges negligence in this particular to prove it.

2. ———: VICE-PRINCIPAL: NEGLIGENCE. In an action by a servant for damages occasioned by the incompetency and carelessness of a vice-principal, the master is liable whether he knew of such incompetency and carelessness or not, provided they were unknown to the person so injured.

3. **Fellow Servants.** A section foreman who is intrusted by the railroad company with power to superintend, direct and control the workmen under his charge is not a fellow servant of such workmen. Affirming *Moore v. The Wabash, St. Louis & Pac. Ry. Co.*, 85 Mo. 588.

4. **Master and Servant**: VICE-PRINCIPAL, KNOWLEDGE OF. The master is chargeable with his vice-principal's knowledge of the incompetence and carelessness of a servant under his superintendence and control.

5. ———: ORDERS OF MASTER: CONTRIBUTORY NEGLIGENCE. A servant is not bound, under all circumstances and at all hazards, to

| | |
|---|---|
| 87 | 285 |
| 37a | 39 |
| 87 | 285 |
| 39a | 429 |
| 40a | 264 |
| 40a | 464 |
| 87 | 285 |
| 43a | 405 |
| 87 | 285 |
| 103 | 383 |
| 87 | 285 |
| 107 | 77 |
| 87 | 285 |
| 50a | 303 |
| 52a | 58 |
| 87 | 285 |
| 55a | 495 |
| 87 | 285 |
| 58a | 330 |
| 87 | 285 |
| 126 | 157 |
| 87 | 285 |
| 85a | 540 |

obey the orders of his master. He cannot recover damages of the master for injuries received while obeying the latter's order, if he had time to deliberate and voluntarily and with knowledge of the peril placed himself in a position in which he was more than likely to be injured.

6. Negligence. Whether one act of negligence is sufficient to establish incompetency in a servant depends upon the character of the act.

7. Practice : INSTRUCTIONS. Where the petition alleges and the evidence shows several acts of negligence as grounds of recovery plaintiff's right to recover should not be confined by instruction to one ground alone.

8. Negligence of Fellow Servant. A servant cannot recover for an injury occasioned by the incompetency, recklessness and carelessness of a fellow servant, where he had knowledge of the same before the injury and notwithstanding such knowledge and without objection continued in the master's service.

9. Master and Servant: NEGLIGENCE OF VICE-PRINCIPAL: KNOWLEDGE OF SERVANT. A servant who takes employment to work under one who stands in the relation of vice-principal to the master, knowing that such vice-principal is incompetent and negligent in regard to his duty respecting the particular work the servant has undertaken to do, and continues in the service without objection, cannot recover of the master for injuries sustained in consequence of the incompetency and negligence of such vice-principal.

10. Principal and Agent: DECLARATIONS OF AGENT. The declarations of an agent will not bind his principal unless made at the time of doing some act within the scope of his agency, and form a part of the transaction itself.

11. ——— : ———. The declaration of the road master, who had authority to employ and discharge the section foreman, that the latter was not " a good railroad man," is not admissible to prove the fact that the section foreman was incompetent, but is admissible to prove that the company had notice of his incompetency if such incompetency was established by other evidence, or there was other evidence tending to establish it, and such declaration being admitted, its effect should have been so controlled by an instruction.

12. Negligence: CONCURRENT ACCIDENT. Where an unforeseen event, concurrent in point of time with an act of negligence, co-operates with the latter to produce an injury, it will not excuse the negligence.

13. Pleading : PETITION. An action for the negligence of a fellow

servant should not be blended in the same count with one for the negligence of a vice-principal.

*Appeal from Clay Circuit Court.*—HON. G. W. DUNN, Judge.

REVERSED.

*Geo. W. Easley* for appellant.

(1) The statement attributable to Goodwin, that "Dawson was not a good railroad man any way," was inadmissible for any purpose. It was not admissible to prove Dawson's incompetency. It was an opinion. Lawson's Expert Ev. 507, 520; *Koons v. Iron Mt. Ry. Co.*, 65 Mo. 597; *Ganeth v. Pacific Ry. Co.*, 49 Mo. 274; *New England Glass Co. v. Lovell*, 7 Cush. 319; *White v. Ballou*, 8 Allen 408. The statement was also incompetent to prove that defendant had notice or knowledge of Dawson's alleged incompetency, because not made at the time Goodwin was performing any duty in regard to hiring or discharging Dawson. *McDermott v. The Hannibal, etc., Ry. Co.*, 73 Mo. 516; *Adams v. Hannibal, etc., Ry. Co.*, 74 Mo. 553; *Garth v. Howard*, 8 Bing. 451. But if this statement was admissible for the purpose of charging defendant with notice it should have been restricted to that alone. *McDermott v. Ry. Co.*, *supra*; *Chapman v. Ry. Co.*, 55 N. Y. 583. The only proper way of proving the incompetency of an employe is by proof of the specific acts relied upon to establish the incompetency. *Pittsburg, etc, Ry. Co. v. Ruby*, 38 Ind. 294; s. c., 10 Am. Ry. Rep. 199; *Banlee v. N. Y. & Harlem Ry. Co.*, 59 N. Y. 357. Notice to the employer may then be shown, by knowledge of the specific acts being brought home to him (38 Ind. 294; 59 N. Y. 357), or by proof of general reputation. *Davis v. Detroit Ry. Co.*, 20 Mich. 105. (2) Defendant's demurrer to plaintiff's evidence

should have been sustained. There was no evidence to justify the verdict, and where the court ought not to let the verdict stand, it ought not to let the case go to the jury. *Randall v. Ry. Co.*, 29 Alb. Law J. 150. It was necessary for plaintiff to prove each of the following facts before he could recover: (*a*) That Dawson was incompetent. *McDermott v. Ry. Co., supra.* (*b*) That the injury to plaintiff was caused by Dawson's incompetency. *McDermott v. Ry. Co., supra.* (*c*) That defendant knew of Dawson's incompetency before the accident. *McDermott v. Ry. Co., supra.* (*d*) That plaintiff did not know of Dawson's incompetency and had not the means of knowing it. Wood's M. & S., sec. 382, 414, 422. " In suits by servants against their master where the plaintiff's case discloses defects of which an ordinary observer of the plaintiff's station would be expected to take notice, then the plaintiff must show that he did not and could not with ordinary care know the defects." Wharton on Neg. sec. 243, *a;* Mook's Underhill on Torts, 60 ; *Keegan v. Cavanaugh*, 62 Mo. 232 ; *Porter v. Hannibal, etc., Ry. Co.*, 71 Mo. 67 ; *Dillon v. Railroad Co.*, 3 Dill. 319 ; Pierce on Railroad, 379, note 4. (3) The plaintiff's first instruction is erroneous (*a*) in submitting the question of defendant's want of care in the original employment of Dawson. The law presumes that care was exercised in his employment. Wood's M. & S., sec. 346. And when a competent servant is employed his competency is presumed to continue and the master may rely on that presumption until notice of a change. Wharton on Neg., sec. 237 ; Wharton on Ev., sec. 1287 ; *Chapman v. Erie Ry. Co.*, 55 N. Y. 579 ; Weeks' Dam. Abs. Inj., 257, note 5. (*b*) It submits a ground of recovery upon which there was no proof. (*c*) It ignores a material issue made by the pleading—plaintiff's knowledge of Dawson's alleged incompetency. (4) The plaintiff's second instruction is wrong. It does not require the

roadmaster's knowledge to have existed at a time when he was performing any duty for defendant. (5) Plaintiff's third instruction is erroneous. Smith's M. & S. (3 Eng. Ed.) 216. (6) Plaintiff's first instruction refused was correct. *Wonder v. Ry. Co.*, 3 Am. Rep. 148, note 5. (7) Defendant's second and seventh instructions should have. been given. *McDermott v. Ry. Co.*, *supra; Harlan v. Ry. Co.*, 65 Mo. 25 ; *Greenland v. Chaplin*, 5 Ex. 243 ; *Sharp v. Powell*, 20 W. R. 584 ; 1 Add. on Torts (Wood's Ed.) p. 13, sec. 11 ; p. 12, sec. 10 ; Cooley on Torts, 69. (8) The third instruction asked by defendant should have been given. *Waldhier v. Ry. Co.*, 71 Mo. 519. (9) The sixth instruction asked by defendant is undisputed law everywhere except in the trial courts of this state. *Lee v. Detroit Bridge Co.*, 62 Mo. 565 ; Whart. on Neg. (2 Ed.) sec. 238.

*Wm. S. Carroll* for respondent.

(1) It is only necessary for a party plaintiff to prove as many of the facts alleged by him as amount to or constitute a cause of action, and when more causes of action than one are alleged, the proof of facts constituting one cause of action will be sufficient to entitle plaintiff to recover. *Long v. Doxey*, 50 Ind. 385 ; *Dowling v. The Gerard B. Allen Co.*, 74 Mo. 13. (2) The second cause of action is one of a peculiar class with principles governing it not applicable in all respects to any other class of cases between master and servant. 17 Wall. 553 ; *Greenleaf's Adm'r v. Ill. C. Ry.*, 29 Iowa, 14 ; *Patterson v. Ry. Co.*, 76 Pa. St. 389 ; *Porter v. Hannibal, etc., Ry. Co.*, 60 Mo. 160 ; *Fifield v. Northern Ry.*, 42 N. H. 225 ; 5 Vroom (N. J.) 151 ; *Ill. Cent. Ry. v. Welch*, 52 Ill. 183 ; *Lalor v. C., B. & Q. Ry. Co.*, 52 Ill. 401 ; *Ry. Co. v. Hurney*, 28 Ind. 28 ; *Railroad v. Gregory*, 58 Ill. 272 ; Cooley on M. & S. 11. (3) In

this class of cases knowledge of danger by servant is not a bar to recovery. Wood's M. & S., sec. 352. (4) If the servant incurred the risk by the express direction or command of the master or his agent, and the danger was not inevitable or a necessary result of performing the service, the master is liable although the servant knew. *Patterson v. Ry.*, 76 Pa. St. 389; *Laning v. Ry.*, 49 N. Y. 531; *Greenleaf v. Ry.*, 29 Ia. 14; *Filke v. Ry.*, 53 N. Y. 549; *Clark v. Holmes*, 7 H. &. N. 937; Wood's M. & S., secs. 378, 387; *Hoey v. Ry. Co.*, 18 W. R. 930; *Huddleston v. Machine Shop*, 106 Mass. 282; *Britton v. Catton Co.*, Law Rep. Exch. 130; *Snow v. Ry. Co.*, 8 Allen 411. (5) Goodwin's declaration was admissible. He was a vice-principal. 17 Fed. Rep. 67; *Stone v. Bird*, 16 Kans. 490; 49 N. Y. 521; 55 N. Y. 583. (6) The verdict is for the right party, and the instructions as a whole fairly presented the case to the jury. This court will not reverse in such cases. 67 Mo. 313; 17 Mo. 310; 15 Mo. 175, 349, 598; 7 Mo. 128.

HENRY, C. J.—This is an action by which plaintiff seeks to recover damages for an injury which he sustained, alleged to have been occasioned by the negligence and incompetency of George Dawson, a section foreman in the employment of defendant, who, it is charged, ignorantly, negligently and carelessly ordered plaintiff, a section hand in defendant's employ, to go upon the railroad track and assist in removing from it a hand-car, when a train of cars was approaching and near at hand, the engine of which injured him, while so engaged. It is not clear whether the action is based upon the theory that Dawson and plaintiff were fellow servants or that Dawson was defendant's vice-principal. The petition has a double aspect, but the cause was tried on the theory that plaintiff and Dawson were fellow servants, and we will consider the petition as sufficient to warrant a recovery, in either view.

It is alleged that Dawson was a section foreman, and was incompetent when employed by the defendant, which it knew, or, by the exercise of ordinary care, would have learned that he was incompetent. These allegations are proper in an action to recover damages for an injury occasioned by the negligence, or incompetency of a fellow servant, while other facts are alleged in the petition, which constituted Dawson the company's *alter ego*, as was held in *Moore v. Ry. Co.*, 85 Mo. 588. On the trial of the cause, plaintiff obtained a jndgment from which defendant has appealed.

For plaintiff the engineer on the train which injured him testified that the engine was not exceeding one hundred yards from plaintiff when he first saw him. That plaintiff then had hold of the hand car. As soon as witness saw him, he blew the whistle, and continued to blow it until the hand car was struck. He attempted to stop the train but could not. The grade was a very steep down grade. He expected the men to get the hand car off the track. The train was running slow at the time. It was a regular train, and was on time. There was a pile of ties near the track, from four to six feet high, between ten and fifteen feet from the rail, and there was a ditch between the tie pile and the track.

The plaintiff testified that Goodman was the road master, and it was his duty and power to employ and discharge the foreman and work hands of defendant. That on the twenty-eighth of July they were engaged in raising and repairing the railroad track, and had a hand car on the track in the afternoon, between three and four o'clock. At that time a freight train came along, and Dawson ordered the hands to take the hand car off of the track. There was a large load of strap and tools on the hand car. "We tried to obey the order, but one end of the hand car stuck in the ditch alongside the track, and prevented us. I think we would have got it off in time but for that. While I was trying to get it

off, some of the men said : 'Look out for the train.' I left the car and got off the' track, but the train struck the hand car, threw it against and on me, and I was thrown against the pile of ties. I had worked on railroads six years, and on this section, under Dawson, about one year. When I first saw the train it was one hundred or one hundred and twenty-five yards away. Saw it just as it whistled. Dawson first gave the order to get on the hand car and take it to the crossing, before' the whistle was blown, and when it whistled, he gave the order to take it from the track. In taking it off, the front wheels, stuck in the mud of the ditch, and, but for this, believe we would have got it off. Dawson and I were working together, at the same end of the car. The other hands were at the other end. I didn't like the way Dawson worked the track. Never saw him have any trouble with his hand cars before.''

Peter McGaffney, for plaintiff, testified substantially as plaintiff did, with respect to the accident. He also stated that being caught on the track by trains was nearly a daily occurrence. That the pile of ties was from six to eight feet from the track. That the next day after the accident a regular daily train had to check up to let them get a hand car off of the track. That when witness was foreman for defendant a rule required hand cars to be taken from the track ten minutes before a train was due.

Samuel Craighead, for plaintiff, testified that he worked under Dawson in 1874 and 1875. Dawson was a weaver by trade before he went on the railroad. ''Don't think he was competent to have charge of a section. He ran a great many risks. Has run his car against trains. Would run his hand car on train time, and had one car broken up before the one in question. Don't know that Dawson was ever discharged by defendant.'' On cross examination, he testified as follows: ''I worked under Dawson eight or nine months. Don't

know, of my own knowledge, that he had a hand car wrecked before the one in question, but saw the pieces. Don't know that the train which wrecked it was a regular or an extra. This was the only one ever wrecked that I know or ever heard of while Dawson was section foreman." This witness also testified in chief, that before plaintiff was injured, in February, 1875, he had some words with Dawson and quit defendant's service. That he went to Goodwin to get his time, and Goodwin asked him why he quit? Witness replied that he did not like the way Dawson was working, that he worked the hands until after six o'clock, and wouldn't give them an hour at noon. That Goodwin then said: "Dawson is not a good railroad man any way, but I wanted to give him a chance." This was admitted over defendant's objection. Witness also stated that Dawson was not a careful man at all. "We often ran a good many risks in getting hand car off of the track, often in a tight place. He would say a train is due, and order us to get on the hand car. He did this frequently. Plaintiff, I think, was with us when Dawson did and said these things. I suppose he heard it, as he was there."

Nicholas Quirk testified that he did not consider Dawson a reliable railroad man, because he had not experience. He had been a cotton spinner before he went to work on the railroad. When a section hand under witness, he discharged him for bad shoveling. Never saw him act as section foreman. His opinion of Dawson was formed in 1869, and he never saw Dawson at work after that time, more than four years before plaintiff was injured. Defendant introduced evidence tending to prove that Dawson was a competent and good section foreman—as good as any on the road.

The court, for plaintiff, gave four instructions, and, of its own motion, three, and refused seven asked by defendant. Plaintiff's first was to the effect, that if the jury found that plaintiff was injured, while acting in

obedience to the order of the section foreman, and he was incompetent, reckless and careless, and that defendant, when it employed him, knew such to be his character, or might have learned the fact by the exercise of reasonable care, or, if it retained him in its employment, after learning that such were his character and habits, and that the order given by the foreman, on the occasion in question, required plaintiff to take a greater risk than was reasonably incident to his employment, and that he was injured in obeying said order, in consequence of the carelessness and recklessness of the foreman, and that plaintiff, at the time, was exercising ordinary care, the jury should find for the plaintiff. This instruction is objectionable, in that it submits to the jury a question upon which there was no evidence. If there was any testimony, tending to prove that the company, in the employment of Dawson, in the first instance, was guilty of negligence, it has escaped my attention. All that can be urged is that he was retained in the service after his incompetency and carelessness were known to the company. The law presumed that care was exercised by defendant, in the employment of its servants. Wood on Master and Servant, sec. 346; *Davis v. Detroit & Milwaukee Ry. Co.*, 20 Mich. 125. If negligent in employing Dawson, the burden was upon plaintiff to prove it.

This criticism, however, is based upon that aspect of the petition which presents the plaintiff and Dawson as fellow servants. In the other, in which the section foreman appears as the *alter ego* of the company, the latter is liable, whether the incompetency and carelessness of Dawson was known to the defendant or not, if plaintiff was ignorant of such incompetency and careless habits. Following the decision in the case of *Moore v. The Wabash Ry. Co.*, 85 Mo. 588, and re-affirming the doctrine of that case, we must hold that plaintiff and Dawson, on the allegations and proof, were not fellow ser-.

vants. See, also, *Lake Shore, etc., Ry. Co. v. Lavalley*, 36 Ohio St. 221. It follows, therefore, that in the latter view of the case, the instruction was harmless.

The second instruction declared that the road master's knowledge of Dawson's incompetency and careless habits, was to be imputed to the defendant. This is a correct declaration of the law, and properly given, upon the theory that Dawson and plaintiff were fellow servants, and in the other aspect of the case, was an unnecessary and harmless declaration of a correct abstract proposition.

The third instruction declared that what plaintiff did, in obedience to the order of Dawson, was not to be imputed to him as negligence. This is objectionable. It withdrew from the jury the question of plaintiff's contributory negligence, and assumed and determined that plaintiff was not chargeable with contributory negligence. A servant is not, under all circumstances, and at all hazards, bound to obey the order of his master. Obedience to an order may so manifestly jeopardize the safety of the servant as not only to justify, but to demand his disobedience. No servant can voluntarily place himself in a position in which it is more than likely that he will be injured and recover damages from his master, if he had time to deliberate, and with knowledge of the peril took the risk. *Coombs v. New Bedford Co.*, 102 Mass. 572 ; *Sullivan v. India Co.*, 113 Mass. 396.

The defendant's first, second, fourth and fifth instructions were substantially embraced in the first given for plaintiff. The sixth declared that one act of negligence would not justify a finding that Dawson was incompetent. Of this it is sufficient to say, that whether one act of negligence will establish incompetency, or not, depends upon the character of the act. It may be such as, *per se*, to prove incompetency. *Baulec v. Ry. Co.*, 59 N. Y. 362. Besides, there was evidence tending

to prove more than one act of carelessness on the part of Dawson. We abstain, however, from passing upon its sufficiency to establish the fact.

The seventh of defendant's refused instructions declared that if plaintiff's injuries were occasioned by the pile of ties near the ditch, and not by Dawson's incompetency, the jury should find for defendant. This assumes that the only ground of recovery alleged in the petition was Dawson's incompetency, whereas the cause of action alleged was the incompetency of Dawson, the recklessness of the order given by him, and the negligence of the company in permitting the pile of ties to remain near the track, all as concurring to produce the injury.

The defendant's third instruction declared that if plaintiff, before he was injured, knew that Dawson was incompetent, reckless and careless, and notwithstanding such knowledge, continued in defendant's service, working under Dawson, without objection, he was not entitled to recover. That instruction on the theory that plaintiff and Dawson were fellow servants should have been given. The law, as therein declared with respect to fellow servants, is well settled. *Dillon v. Union Pacific Ry. Co.*, 3 Dillon, 323 ; *Devitt v. Pac. Ry. Co.*, 50 Mo. 302 ; *Laning v. N. Y. Cent. Ry. Co.*, 49 N. Y. 521 ; *Watling v. Oastler*, 6 L. R. Exch. 73 ; *Keegan v. Kavanaugh*, 62 Mo. 232 ; Wood on Master & Ser., secs. 422, 423 ; *Davis v. Detroit & Milwaukee Ry. Co.*, 20 Mich. 125. In the latter case, Judge Cooley said : " If with knowledge of the recklessness of Harris, the plaintiff continued in the employ of defendants without complaint, did he not take upon himself all risk of injury from such recklessness, while in the ordinary performance of the services he had undertaken, as much so as if he had expressly contracted with reference to possible injury from such unfitness ? We think both these questions must be answered in the affirmative." See, also,

*Coombs v. New Bedford Co.*, 102 Mass. 572; *Sullivan v. India Co.*, 113 Mass. 396.

Nor is it any answer to say that plaintiff here was not engaged in the ordinary service he had undertaken. That was a question for the jury. It is the ground of plaintiff's complaint that the order given was negligent and rash. This was denied by the answer. If the order was not a reckless one, but such as a prudent and competent foreman would have given under the circumstances, then what plaintiff was ordered to do was within the line of his employment, and the court could not have given plaintiff's third instruction, unless justified in the assumption that the order given by Dawson was recklessly or negligently given, or given because ignorant and unfit for his position. If Dawson was reckless, careless or incompetent, and plaintiff knew it before he was injured, and yet, without objection or complaint, continued to work for the company, that he cannot recover, if they were fellow servants, is a doctrine so well established, so elementary, that it will not be controverted by any one; but the suggestion is made that it is inapplicable when the negligence complained of is not that of a fellow servant, but of a vice-principal. It is asserted by all the law writers on the subject, and in numerous adjudications, that if the servant is aware that the machinery, or other instrumentalities furnished by the master, are defective, and the servant is injured in consequence of such defect, he cannot recover for such injury. "The term, instrumentalities," says Mr. Wood, in his work on Master and Servant, section 394, "embraces, not only machinery, premises and all the implements, of every kind, but also the persons employed to operate them. It is the duty of the master to look out for the safety of his servant, so far as ordinary prudence can secure it, in all these respects."

If the servant is aware of a defect in machinery which he is employed to work with, and is injured in

consequence of such defect, he is without remedy, because it was his duty to report it to the master, and, if not remedied, to quit the service. If the master places over the servant one who is careless or incompetent, to the knowledge of the servant, the same duty of reporting to the master devolves upon the servant, and can it be that the servant, knowing the danger to which he is constantly exposed, can hold the master liable for his injury, when the master is less to blame than himself? One taking employment of another to work under one who stands in the relation of a vice-principal to the master, knowing that such vice-principal is incompetent and negligent, cannot recover for injuries sustained in consequence of the incompetency and negligence of such servant, in the very matter in which such incompetency or negligence occasioned the injury. In other words, that such servant was generally incompetent or negligent, to the knowledge of the complainant, will not amount to contributory negligence, but such incompetence or negligence must be in regard to the particular duty in performance of which the negligence occurred which occasioned the injury, or the incompetency complained of was exhibited. No one who has reached the age of discretion can recklessly or heedlessly run into danger, and recover of another damages for an injury sustained in such a venture.

It is true that the negligence of a vice-principal is, in law, the negligence of the master. So is the neglect to furnish suitable implements and machinery; yet, if the servant is aware that the machinery is defective, and is injured in consequence of a defect of which he had knowledge, he cannot recover of the master damages for such injury. What reason can there be for excusing the master's negligence in such a case, that does not apply, with equal force, to the case of a servant injured by the carelessness of a vice-principal, or *alter ego* of the master? If he knew that the carelessness or incom-

petency of the vice-principal, with respect to a certain.
duty which the latter had to perform, was daily expos-
ing him to peril beyond that incident to his employ-
ment, can he continue in the service, without complaint,
and not be chargeable with contributory negligence, if
injured in consequence of such ignorance or careless-
ness? Beach on Con. Negligence, p. 311 ; *Ib.*, sec. 8,.
p. 16. And standing in so near a relation as that be--
tween this plaintiff and Dawson, the one a section hand
and the other his foreman, the former having daily
opportunity to observe the negligent conduct and in-
competency of the latter, which the master is not likely
to learn except from reports of other of its employes,
upon what principle can the injured servant be acquitted.
of contributory negligence, if injured through the ignor-
ance or negligence of that foreman ? Instructions em--
bodying the principles herein announced should have
been given.

With regard to the testimony admitted, that Good-
win said to Craighead that "Dawson was not a good.
railroad man," the admissibility of the declarations of
an agent against his principal can, on principle, be main-
tained, only where what the agent said was in the trans-
action of the business of his principal and was a part of
the transaction itself. But conceding, and it is an ex--
ceptional case, that what Goodwin said to Craighead was.
admissible to prove that the company had notice of the
fact of Dawson's incapacity, if *that fact was established
by other evidence, or there was other evidence tending
to establish it*, yet Goodwin's statement was inadmissible
*to prove the fact that Dawson was incompetent.* A first
impression of the distinction is that it is shadowy and
unsubstantial, and so it struck me, but, on reflection, it
will be found to be real, and it is recognized by high
authority. In *Chapman v. The Erie Ry. Co.*, 55 N. Y.
584, the defendant's responsibility was sought to be
established by proof that one Allison, a telegrapher,

although of good habits and competent for his position when employed, had since become addicted to the use of intoxicating drinks to such an extent as rendered him unfit for the position, and that Fisk, the defendant's superintendent had knowledge of his habits, and a witness was permitted on the trial to testify that he heard Fisk say, prior to the injury of plaintiff, that: "He must quit this," referring to Allison's habit of drinking. It was objected that this was inadmissible, but Church, C. J., delivering the opinion of the court, said: "As evidence of the fact of the habit of drinking it was not admissible, within the general rule that the declarations of an agent will not bind his principal unless made at the time of doing some act within the scope of his agency, and which in point of fact constitutes a part of the act itself. But we think this evidence was competent to prove notice to Fisk. Other evidence was produced that Allison was in the habit of drinking to excess, and the remark, if it had reference to such habit, was pertinent to establish that he knew it." In the same case, it was held that an admission by Fisk, afterwards, that "he had known the fact," would stand upon a different footing. But the admission made before the alleged injury, "is evidence of a material fact. It would be competent to prove that a third person told him, Fisk, of it, and it is more satisfactory to establish the fact that he admitted such knowledge at the time."

If one were offered to testify that he heard another inform the superintendent of facts, showing the incompetency of an employe, it would be admissible as showing that the superintendent had knowledge of those facts, if *the facts themselves were otherwise proved*, but it would certainly be inadmissible to prove those facts. It would be but hearsay evidence as to the existence of the facts. It is upon the same principle that the admission of an agent of his knowledge of facts is competent to prove his knowledge of the facts, if the existence

of such facts is otherwise proved; but it is incompetent to prove the existence of the facts. What an agent says is but hearsay, as against the principal, unless a part of the transaction he is engaged in for his principal at the time. See, also, *Gilman v. Erie Ry. Co.*, 13 Allen, 444.

In the case we are considering, the defendant's objection was, that the evidence was inadmissible, for any purpose, but being inadmissible to prove Dawson's incapacity, the court admitting it for the other purpose, should have told the jury that they could only consider it as evidence tending to prove notice to the company of Dawson's incompetency, if such incompetency was established by other testimony, but not to consider it, either by itself or in connection with other testimony, as evidence of the fact that Dawson was incompetent. It was especially proper in this case that such an admonition should be given. Without reviewing the evidence on the subject, we may say that a jury might not have found that Dawson was incompetent, if they had been instructed as to the proper effect to be given to this testimony of Craighead. It is true, that even with such instruction, the jury might have found that Dawson was incompetent, and that such finding would not have been disturbed, either by this or the trial court, but as we cannot say that their finding would have been the same, we must hold that the error was material.

It is also strenuously contended that defendant's demurrer to the evidence should have been sustained on the ground, that, conceding the order given by Dawson to have been reckless, etc., still plaintiff would not have been injured if the car wheels had not stuck in the mud of the ditch, and cases are cited bearing some analogy to this in which it was held that the complainant could not recover; but I apprehend that in all of them it will be found that the negligence complained of was disconnected, in point of time, with the subsequent co-operating cause of the injury. As in *Morrison v. Davis & Co.*,

20 Pa. St. 171, where a common carrier undertook to transport goods from Philadelphia to Pittsburg by canal. The goods were destroyed on their way, by an extraordinary flood, but would not have been at the place of injury, if they had not been delayed by the lameness of a horse attached to the canal boat. Defendant was held not liable. Lowrie, J., said: "Had the property been exposed to the flood by a wrongful act, concurrent in point of time, the party would have been responsible." This, we think, states the correct principle. Both causes, in the case at bar, concurrently co-operated at the same time to produce the injury, and while the car might have been removed, if the wheels had not stuck in the mud, and this event could not have been foreseen by Dawson, yet if the order was improperly given, the defendant is liable for the immediate consequences of plaintiff's attempt to obey it, although other causes concurred at the time to produce the injury.

This cause was once before in this court on defendant's appeal, and is reported in 73 Mo. 518, and, as for the errors above noted, the judgment will be reversed and the cause remanded, we have deemed it necessary to notice all the points presented so that the next may be a final trial of the cause. We are not prepared to say that the petition is defective, but think it better pleading to state the precise cause of action relied upon. If it is sought to charge the company for negligence of a *fellow servant*, as contradistinguished from a vice-principal, let that be stated in one count. If plaintiff seeks to recover for the negligence of the company itself, or its vice-principal, let that be stated in a separate count; but blending the two in one count and trying the cause on both together, without distinguishing between them in the instructions to the jury, tends to confuse them, and has given us no little trouble.

The judgment is reversed and the cause remanded. All concur, Judges Norton and Black in the result.

NORTON, J., CONCURRING.—While agreeing to the conclusion reached in this case, I do not concur in so much of the opinion as announces the doctrine that an employe operating and under the control of an incompetent vice-principal, who sustains an injury occasioned by the negligence of such vice-principal, cannot recover for such injury, if he had knowledge of such incompetency, and made no complaint to the company. I know of no authority recognizing the doctrine. Judge Black concurs in what is herein said.