ANDREW COX, Respondent, v. THE SYENITE GRANITE COMPANY, Appellant.

St. Louis Court of Appeals, February 18, 1890.

1. **Master and Servant:** VICE-PRINCIPAL. Any foreman of the master, though not the head foreman, is a vice-principal as to a servant, if he has the control of the work in which the servant is engaged and is the person entrusted by the master with authority to direct the servant how, when and where to work.

2. ———: CONTRIBUTORY NEGLIGENCE: NON-SUIT. A plaintiff cannot be non-suited on the ground of contributory negligence, unless an inference of negligence unavoidably arises from the evidence offered by him.

3. ———: ———. If a servant voluntarily and knowingly places himself in an extra dangerous position beyond the hazard of his employment, he is guilty of negligence; but he is not guilty of contributory negligence if he assumes such position in obedience to the directions of his master (or vice-principal) relying on the better position of the latter for observation, and believing with reason that he will be safe from danger in so doing.

4. ———: ORDERS BY MEANS OF SIGNALS. An order from a master to his servant may be given by a signal, and whether or not a certain signal is equivalent to an order is a question of fact for the jury.

5. Instructions: REFUSAL OF INSTRUCTIONS ALREADY GIVEN IN SUBSTANCE. The refusal of a proper instruction is not error, when it is embodied, in substance, in other instructions given by the court.

6. ———: PRACTICE OF GIVING A CHARGE OR COMPLETE CONNECTED INSTRUCTION COMMENDED. It is preferable that the trial court should give one connected charge, rather than a number of disconnected instructions.

7. Practice, Appellate: NON-PREJUDICIAL ERROR. Error in permitting an improper question is not prejudicial, when the question and answer merely tend to establish an indisputable fact.

*Appeal from the Iron Circuit Court.*— HON. J. L. THOMAS, Judge.

AFFIRMED.

*W. R. Edgar* and *Geo. H. Benton*, for the appellant.

The court erred in not sustaining the defendant's demurrer to the testimony, at the close of the evidence introduced by the plaintiff. *McDermot v. Railroad*, 73 Mo. 517; *Stephens v. Railroad*, 86 Mo. 221. (2) The order of Ross Quinley, by a wave of the hand, was not such an order as justified the plaintiff to put himself into known danger. Wood on Master and Servant [2 Ed.] sec. 352; *Devitt v. Railroad*, 50 Mo. 322; *Conroy v. Iron Works*,

62 Mo. 35. (3) The court erred in refusing to instruct the jury, at the close of the whole case, as it was requested to do by the defendant. *Conroy v. Iron Works*, 62 Mo. 35; Wood on Master and Servant [2 Ed.] secs. 352 and 353, and notes; *Reed v. Northfield*, 13 Pick. 94; *Whittaker v. West Boylston*, 97 Mass. 273; 2 Thompson Neg. 975; *Kilgore v. Kavanaugh*, 62 Mo. 230. (4) The court admitted improper, illegal and irrelevant testimony offered by plaintiff against defendant's objection. *Newmark v. Ins. Co.*, 30 Mo. 160; *Fitzgerald v. Hayward*, 50 Mo. 516.

*J. B. Walker* and *Dinning & Byrns*, for the respondent.

Ross Quinley was a vice-principal. *Moore v. Railroad*, 85 Mo. 588; *McDermott v. Railroad*, 87 Mo. 285; *Dowling v. Allen*, 88 Mo. 293; *Stover v. Railroad*, 86 Mo. 228; *Hoke v. Railroad*, 88 Mo. 360; *Ischer v. Railroad*, 93 Mo. 261; *Coney v. Railroad*, 86 Mo. 635; s. c., 27 Mo. App. 170. That a demurrer to the evidence may be sustained, there must be a failure of proof upon some material issue, even after every inference in favor of the plaintiff which could be reasonably deduced from his evidence had been indulged. *Harris v. Railroad*, 89 Mo. 233; *Buesching v. Gas-Light Co.*, 73 Mo. 219; *Frick v. Railroad*, 75 Mo. 595; *Ins. Co. v. Crutchfield*, 9 N. E. Rep. 458; *Hawley v. Dawson*, 18 Pac. Rep. 592; *Ins. Co. v. Lewis*, 1 South. Rep. 862. The defendant waives his demurrer to the plaintiff's evidence, by presenting his own case; if he desires to avail himself of it, he must stand on it. *McCarthy v. Railroad*, 15 Mo. App. 385; *Cadmus v. B. & T. Co.*, 15 Mo. App. 86; *Goodger v. Finn*, 10 Mo. App. 226; *Bolt & I. Co. v. Buell*, 8 Mo. App. 594. The court did not err in refusing defendant's instructions numbered 1, 2, 3, 4, 6 and 7. *Moore v. Railroad*, 85 Mo. 588; *McDermott v.*

*Railroad*, 87 Mo. 285; *Dowling v. Allen*, 88 Mo. 293. Defendant's instructions were properly refused, for they came within the inhibition of the rule laid down in *Fitzgerald v. Hayward*, 50 Mo. 516, that a party must not so frame the instructions asked as to exclude from the consideration of the jury the points raised by the evidence of his adversary. *Clark v. Hammerle*, 27 Mo. 70; *Sawyer v. Railroad*, 37 Mo. 263.

ROMBAUER, P. J., delivered the opinion of the court.

This is an action for the recovery of damages alleged to have been caused to the plaintiff, a laborer, by the negligence of the defendant's foreman, or vice-principal, in directing or ordering the plaintiff to go to work in a place which the foreman knew, or ought to have known, was, owing to surrounding circumstances, extra hazardous. The answer contained a general denial and the plea of contributory negligence. Upon a trial before a jury the plaintiff recovered a verdict for one thousand dollars, which, considering the plaintiff's injuries, was moderate. The errors assigned are that the court admitted illegal evidence; refused to non-suit the plaintiff, as requested; refused to give proper instructions asked by the plaintiff; and erroneously instructed the jury of its own motion.

The testimony adduced by plaintiff tended to establish the following facts: He was a laborer in defendant's employ, and, on the day of the accident, was engaged in splitting rock in the deepest portion of defendant's quarry. The quarry at that place had on one side a nearly perpendicular wall of over fifty feet, and one of the defendant's derrick masts was placed at some distance from the upper edge of that wall, the boom attached to it swinging over the quarry. Suspended on this boom was a boat or cab, which was usually loaded in the quarry with rock, and then hoisted by means of the derrick to the upper edge of the quarry, and there swung back to a car track of the

defendant. When the rock from the boat was unloaded into the cars, the empty boat was swung back and lowered into the quarry, to be reloaded again. While the boat was being hoisted in the quarry, there was a well-known danger from rocks falling out of it to the men working below. The laborers knew of this danger, and those, who were likely to be affected by it, usually left their work when the boat was being hoisted, and returned only when it was swung back; but there was no evidence of any regulation or prohibition, requiring them to desist from work while the boat was in transit, nor was there any evidence of danger from falling rocks after the boat had passed the upper edge of the quarry, and was being swung towards the cars.

The testimony further tended to show that one Quinley was the defendant's foreman directing and ordering the work to be done by the plaintiff, and a gang of about fifteen men, of whom plaintiff was one, and, though a subordinate foreman, was practically one of the head foremen, two other foremen of equal rank with him being in charge of other gangs of men.

While the loaded boat was being hoisted from the quarry, at the date of the accident complained of, the plaintiff had retired to a place of safety, from which position, however, he could not see the edge of the quarry over which the boat had to swing. Quinley was standing on a ledge of rock on the further side of the quarry, from which he could see the moving boat, until it disappeared in swinging back above the upper edge. Near Quinley a steam drill was at work making considerable noise, so that his voice could not be heard at any distance. The plaintiff and several of his witnesses testified that, while this was the situation of things, Quinley by a motion of the hand indicated to the plaintiff that he should return to the rock which he had been splitting, and one witness testified that the motion was accompanied with the remark, "Everything is all right,

go back to work." The plaintiff, believing that the boat had passed the upper edge of the quarry, and as he claims in obedience to such order or direction, left his place of safety and returned to work, and immediately thereafter was struck by a rock, which had fallen out of the boat, after it had swung over the edge, but which rolled back and fell into the quarry, inflicting upon him serious injuries.

On this evidence, the defendant asked the court to declare the law that the plaintiff could not recover, which instruction the court refused to give. It is claimed that this was error because, under the evidence, Quinley was not the defendant's vice-principal, in giving the order to plaintiff to return to work, because a motion of the hand could not be construed into an order, and because the plaintiff knew that his returning, prior to the return of the boat, was dangerous, and his encountering a known danger, even in obedience to a lawful order, was contributory negligence as a matter of law.

The plaintiff's evidence, as above shown, tended to prove that Quinley had the control of the work in which the plaintiff was engaged, and was the person entrusted by the master with authority to direct him how, when and where it should be done. This evidence was sufficient under the more recent decisions in this state to constitute Quinley a vice-principal. *Moore v. Railroad*, 85 Mo. 588; *McDermott v. Railroad*, 87 Mo. 285; *Dowling v. Allen*, 88 Mo. 293; *Hoke v. Railroad*, 88 Mo. 360. The defendant's counsel substantially concedes this, but claims that, although Quinley may have been a vice-principal in ordering the plaintiff when and how to work, he was not a vice-principal for the purpose of ordering him when to return to work, under circumstances where that question was regulated by the plaintiff's own discretion. The reason for any such distinction is not apparent. If the plaintiff voluntarily and knowingly placed himself in an extra

dangerous position, beyond the hazard assumed by his occupation, he would be debarred of recovery on the ground of his own negligence, regardless of Quinley's orders, but whether he did so or not was a question of fact for the jury, and was submitted to the jury by the court on an appropriate instruction. We have decided in *Hudson v. Railroad,* 32 Mo. App. 667, and subsequent cases, following *Keim v. Railroad,* 90 Mo. 314, that a plaintiff cannot be non-suited, on the ground of contributory negligence, unless an unavoidable inference of negligence arises from the evidence offered by him. The present case presents no such feature. The jury were warranted to infer from the evidence that the plaintiff, relying on the better position of the foreman for observation, had reason to believe, and did believe, that all danger from rock falling out of the boat had passed, and that he was safe from any danger on that account in returning to his work. Whether the motion of the hand, or signal, was equivalent to an order, was also a question of fact, and was fairly submitted to the jury. The noise made by the steam drill in the immediate vicinity of the foreman made an order by signal not unreasonable, and the jury could have found the order, even if they entirely rejected the uncorroborated evidence of one witness that the order was verbal. Orders by signal are frequent, and in the case of moving railroad trains, of daily occurrence, and it is worthy of remark that in *Hoke v. Railroad, supra,* the company was held liable upon a signal, although the evidence was conflicting whether the wrong or right signal was given, while in the case at bar the testimony of numerous witnesses that the order was given by signal is not even contradicted in positive terms by Quinley himself.

The defendant asked numerous instructions. The court refused them all, but of its own motion instructed the jury as follows : " The court instructs you, gentlemen of the jury, as follows : If you believe and find

from the evidence in the cause that in April, 1888, the plaintff was engaged as a laborer by the defendant in its quarry; that one Ross Quinley was at that time employed by defendant to oversee the work being done by plaintiff, and that by virtue of his employment and position he had immediate control and direction of plaintiff and others engaged in work with plaintiff, and had power and authority to direct and control plaintiff in his work; that in April, 1888, a boat of rock was being hoisted by means of a derrick from defendant's quarry in the vicinity where plaintiff was at work, and that it was known to said Quinley and the other workmen to be dangerous for any one to remain in the quarry beneath the derrick used in hoisting the stone, until after the boat in which the stone was placed had been transferred on to a car near such derrick and the chain by which the boat was raised was detached therefrom; that plaintiff had retired to a place of safety while such boat was being hoisted; and that said Quinley, acting by virtue of his employment by defendant, negligently and carelessly ordered plaintiff to go back to his work before the danger from the boat being hoisted had passed, and that plaintiff had reason to believe, and did believe, that the danger of resuming work had passed, and, under such circumstances, plaintiff obeyed such order of said Quinley, and returned to his work, and while so engaged a stone fell from the boat being hoisted and struck and injured plaintiff, and that such injury was solely the result of said Quinley's negligent and careless order aforesaid, then you will find the issues for the plaintiff.

"If you find from the evidence that said Quinley indicated by a wave of the hand for plaintiff to return to his work, and said Quinley intended by such wave of the hand to convey, and he thereby did convey, to plaintiff the idea that he should return to his work, then he ordered him to return to his work within the

meaning of these instructions even though he said not a word.

"On the other hand, however, if you find from the evidence in the cause that said Quinley gave no orders, either by word or act, for the plaintiff to return to work, but he resumed work on his own responsibility, then defendant is not liable, and you will return a verdict for defendant. If you find the issues for the plaintiff, you will assess his damages at such sum as you may find from the evidence he is entitled to, not to exceed twelve thousand dollars.

"In determining the amount of damages you will allow, you may take into consideration the nature and extent of plaintiff's injuries, whether permanent or temporary, as also his physical and mental sufferings.

"If you find from the evidence that plaintiff knew that the danger from the boat being hoisted had not passed, and, so knowing, he resumed his work, then the defendant is not liable, and you will so find even though you may further find that said Quinley gave the order for him to return to work as set out in these instructions.

"The burden of proof is on plaintiff in this case to satisfy your minds by a preponderance of the evidence of every fact necessary for him to recover as set out in these instructions, and if he has not done so you will find the issues for the defendant."

The question in this case is not whether the instructions refused presented proper propositions of law applicable to the evidence, but whether they were embodied in the charge given by the court to the jury. Both the supreme court and this court have frequently decided that such is the true test in determining whether error has been committed in the refusal of instructions. Where the charge of the court to the jury, as in this case, is unobjectionable, and presents

Cox v. Granite Co.

every element presented by the evidence, which the defendant is entitled to have submitted to the jury, the defendant cannot complain that instructions asked by him, embodying the same propositions in a different form, have been refused. We deem it preferable that the court should, in every case, place before the jury the law applicable to the facts in one connected charge, instead of giving disconnected declarations at the instance of the respective parties, and let the jury find out, as best they may, the relative application of the disconnected law to the disconnected facts. The action of the court in this case in placing before the jury in a succinct form the various propositions of law applicable to all the facts is to be commended, and if the practice were more general, a mode of trial, which is imperfect at the best, would be less liable to result in a miscarriage of justice.

We see no error in the court's action upon the instructions. That part of the charge, which relates to the plaintiff's contributory negligence, is defective in not adding after the word "knew" the words "or had reasonable cause to believe," but as the predicate of reasonable cause to believe was contained in the former part of the instruction, the failure to repeat it at the close of the charge was necessarily harmless.

The plaintiff was asked whether, if he had remained in the place where he sought shelter, and had been there when the rock fell, he would have been struck by it. He answered this question in the negative. The question was objected to as calling for the opinion of the witness. The question was ill-advised, but since, under the conceded facts of this case it was a physical impossibility that the plaintiff could have been struck by the falling rock in any other place than where he actually was struck, we cannot see any possible prejudice resulting to the defendant from an answer to the question. Courts and juries are bound alike to take

Haseltine v. St. L. & S. F. Ry. Co.

notice of the elementary laws of gravitation. Other objections to the evidence, relate to questions as to' how the plaintiff understood the foreman's motion or signal, and whether it was customary to direct men in their movements by motions or signals of the foreman, and are not well taken.

All the judges concurring, the judgment is affirmed.