JULIUS SMITH v. ACME BOILER & TANK COMPANY, Appellant.—
32 S. W. (2d) 576.

Division One, November 18, 1930.

*Fordyce, Holliday & White* for appellant.

*Mark D. Eagleton, John F. Clancy* and *Hensley, Allen & Marsalek* for respondent.

GANTT, P. J.—This case came to me on reassignment. Suit to recover for personal injuries sustained in the course of employment. Plaintiff charges that defendant negligently furnished him with unsafe and dangerous appliances with which to perform certain work; that it negligently failed to warn him of the danger of using said appliances; that it negligently assured him it was reasonably safe to proceed with said appliances and that it negligently ordered him to use said appliances in the performance of the work. The answer is a general denial. Judgment for $20,000, and defendant appealed.

Appellant did not favor us with a statement of the case as required by Rule 15, and we cannot determine from the record the function of appliances making up the equipment used by respondent in performing the work. For this reason we cannot make an understandable statement.

One Schneiders, boiler-maker, and respondent, his helper, both in the employ of appellant, were directed by its foreman "to put the tackle up for the bricklayers to get on the inside" of the smokestack of the Mississippi Glass Company Building. In so doing, they worked from the roof of the building, and it was necessary for one of them to ascend the stack, which is one hundred and fifty feet in height and seventy-two inches in circumference. The stack was built in sections, thirty feet in length, and junctions of the sections were covered by iron bands circling the outside of the stack. To ascend, an S-hook is hung over a band, one end of a rope is fastened to a block at the base of its hook, the rope is passed over the lower end of the S-hook, and by pulling the other end of the rope the block is drawn upward toward the S-hook. When the block reaches the S-hook, it should trip or fall into the lower hook of the S-hook. A seat for the workman is a part of the equipment, and this, in some way not explained, is drawn upward from band to band until the workman reaches the top of the stack. By use of the equipment, respondent ascended the stack to the first band. He then, in some way not explained, hung another S-hook over the second band from the roof, passed the rope over the lower end of the said hook and proceeded to pull himself upward to the second band. When he reached a point about forty feet from the roof, the block hook failed to "trip into" the S-hook, and the lower curve of the S-hook straightened, thereby causing the rope to slip therefrom, and respondent, with all the equipment, except the S-hook, fell to the roof.

Negligence is charged in four paragraphs of the petition. At the close of the evidence appellant, by instructions, requested the court to withdraw from the jury the charges of negligence alleged in all the paragraphs. It does not complain of the refusal of its instruction withdrawing the charge that the S-hook "was not of adequate strength for the work for which it was then and there being used," but contends there is no evidence to support the charges of negligence alleged in the other paragraphs.

Appellant concedes there is evidence tending to show the S-hook was too small, but contends there is no evidence tending to show the block and its hook were too large, as charged in the first paragraph. Schneiders gave testimony tending to sustain this charge of negligence. However, assuming no witness so testified, still, there is evidence tending to show the block and its hook were too large. We so hold, for if the S-hook was too small to permit the block and

738

its hook to "trip in," it follows the block and its hook were too large to "trip in."

Appellant also contends there is no evidence tending to show that the S-hook was not sufficiently curved, as charged in the second paragraph. On this question Schneiders testified as follows:

"Q. When you got those S-hooks that morning, were both of the S-hooks alike? A. No, sir.

"Q. How were they different? A. Well, one was short and ought to be bent in a little more.

"Q. Should have been bent in a little more? A. Yes, sir."

The S-hook referred to was the hook from which the plaintiff fell.

Appellant also contends there is no evidence tending to show it negligently ordered respondent to ascend the stack, as charged in the fourth paragraph. There is evidence tending to show that respondent was working with Schneiders, who had authority to give orders and direct the work, and that respondent, before he proceeded to ascend, asked Schneiders whether it was "all right to go up," and Schneiders answered that it was "all right to go up." We hold that the jury could find that under the circumstances this assurance of Schneiders that it was "all right to go up" was equivalent to an order to respondent to ascend the stack. [Stephens v. Railroad, 96 Mo. 207, 9 S. W. 589; Cox v. Granite Co., 39 Mo. App. 424; Hoover v. Mining Co., 100 Mo. App. 326, 142 S. W. 465.]

The contentions are overruled.

Appellant also contends the verdict is excessive. It states the evidence tending to show plaintiff's condition as follows: "Plaintiff's medical evidence revealed in the testimony of plaintiff's doctors that plaintiff was a man having a marked hump-back; that is, a curvature of the spine, or medically termed kyphosis; and that this condition had existed for some time prior to the injury in question, and, in all probability, had existed since birth or early childhood, and was not due to the injury in question, or any injury, for that matter; and that this condition was a congenital defect; that plaintiff's sacrum was abnormal in size and position—that is, it was thinner and did not extend up (by one and one-half inches) as it usually does in the normal man; that the fifth lumbar vertebra extended down into the space normally occupied by the sacrum, and that this condition had been there probably since birth. Said evidence further showed there was no evidence of fracture, dislocation or arthritis in plaintiff's hip joints, sacrum, coccyx, fifth, fourth, third, second and first vertebra; that X-rays showed a rather marked separation between the upper and lower segments of the coccyx, and that this condition might be due to injury or be a congenital defect.

"The said evidence further showed that plaintiff, before the accident, had good health, and that after the accident plaintiff had a fracture of the left ankle bone, known as the astragalus, and that this fracture was the result of injury. The evidence further showed that plaintiff, immediately after the accident, was suffering from a swollen, tender back, a bruise of about three inches in diameter over the lower part of the sacrum, and laceration about two inches long over the right buttock, a swollen and sprained left ankle and a swollen or tender heel; that the doctors immobilized plaintiff's back, first with adhesive tape and then later on, on January 25, 1926, with a steel brace, which plaintiff has worn constantly since and was wearing at the time of trial; and that the sprained or strained condition of plaintiff's spine was permanent and could come from a fall such as plaintiff had; that the condition of plaintiff's spine limits the lateral and backward movements of his back; and that the said brace which plaintiff was wearing relieves the strain; that a man having kyphosis may never suffer pain until he undergoes some sprain, but that such a man is more susceptible to injury to the spine than a normal man, and that, excepting the history of this case of no prior pain from kyphosis and constant pain in plaintiff's spine since the accident, it was the opinion of Dr. Smith that the pain in said spine was due to the injury.

"The evidence further showed plaintiff was a man thirty-six years old, and earning $37.40 per week at his occupation, and had incurred medical bills of $275, which was limited by plaintiff's instruction on the measure of damages to $250 at the time of trial."

Thus it appears that respondent, with a hump-back, was without pain and able to hump around as a boiler-maker's helper to the tune of $37.40 per week before he fell from the stack. It further appears that since falling he cannot perform manual labor and will never be able to do so. He is compelled to wear a brace around both his back and ankle and has suffered and will continue to suffer severe pain. At the time of trial he had lost wages amounting to $3,000. The evidence tends to show he is a helpless cripple and will so continue during his lifetime. We think the evidence sustains the verdict.

The judgment should be affirmed. It is so ordered. All concur.