J. W. HAWK *et al.*, Respondents, v. NELSON P. APPLEGATE, Appellant.

*Kansas City Court of Appeals, May 20, 1889.*

1. **Evidence:** RULE AS TO ADMISSIBILITY OF DECLARATIONS OF AGENT. The declarations of an agent are admissible in evidence against his principal when a part of the transaction he is engaged in for his principal at the time, and the declarations of an agent admitted in this case are examined and *held* to fall within the rule.

2. **Execution:** ELECTION TO REPLEVIN OR TO CLAIM UNDER THE STATUTE. The owner of goods seized under execution against another has his election to replevin the same out of the hands of the constable, or, to pursue his remedy under the execution statute by notifying the officer of his claim, permitting the goods to go to sale and suing on the indemnifying bond for damages; and his right of election cannot be defeated by the execution plaintiff's giving the indemnifying bond, without the owner's having made the statutory claim to the property after the levy; and what proceedings may have taken place as to other and prior levies are wholly immaterial.

3. ————: PURCHASE PRICE: ESTOPPEL. While personal property is subject to execution for the price thereof except in the hands of an innocent purchaser for value, without notice of such prior claim, yet the position of one who has notice of such prior claim, and who, desiring to buy, is informed by the execution creditor that he would look to the original purchaser and not to the property for the purchase money, and upon the faith of such assurance buys and pays for the property, is not different from that of an innocent purchaser for value without notice, and the estoppel raised by the pleading and evidence in this case was properly submitted to the jury.

*Appeal from the Putnam Circuit Court.*—HON. ANDREW ELLISON, Judge.

AFFIRMED.

*A. W. Mullins*, with *J. E. Burnham*, for the appellant.

( 1 ) The circuit court erred in admitting in evidence the alleged statements of F. H. Smith, agent for the David Bradley Manufacturing Company, as testified to by the plaintiff, J. L. Hawk. It had not been shown, and was not shown by the evidence, that Smith was authorized to make such statement on behalf of his employer. And any acts done or statements or declarations made by an agent must be authorized by the principal, otherwise the principal cannot be bound thereby. *Fougue v. Burgess*, 71 Mo. 389, 390 ; *McDermott v. Railroad*, 87 Mo. 285 ; Story, Agency, secs. 134, 451. ( 2 ) The record shows that the Hawk Brothers and Roth claimed the property in question after it was levied on by the constable under the executions in favor of the David Bradley Manufacturing Company and against L. K. Flannagan & Co., and delivered to the constable a written notice of such claim verified by their affidavit ; and that the said plaintiff in said executions, by reason of such claim being made, executed a bond of indemnity to the constable, with good security, approved by him. The record also shows that this bond was returned to the justice with the said executions issued by him. Such bond having been given the said claimants, the plaintiffs, in this case, were precluded and barred of any right of action against the constable, the defendant herein. It therefore follows that the circuit court erred in giving plaintiff's first instruction, and, also, in refusing to give defendant's second instruction. R. S., secs. 3023, 3024, 3025, p. 505. (3) The plaintiffs knew when they purchased the property in question from L. K. Flannagan & Co. that it had not been paid for, and therefore they are not entitled to hold the property as innocent purchasers, for value, without notice of the existence of the prior claim of the manufacturing company for the purchase money. On the contrary said property remained in plaintiffs'

hands subject to the executions issued on the judgments for the purchase money. It results that the defendant's first instruction should have been given as asked, and plaintiffs' fifth instruction refused. R. S., sec. 2353, p. 393; *Parker v. Rodes,* 79 Mo. 88; *Milling Co. v. Turner,* 23 Mo. App. 103. (4) The court erred in giving instructions with respect to estoppel, because : (*a*) The testimony did not show that it was within the scope of the agency of Smith to make the alleged statements imputed to him by plaintiffs and upon which they rely as grounds for estoppel. *Fougue v. Burgess,* 71 Mo. 389. (*b*) And the letter from the plaintiffs, Hawk Brothers, dated September 7, 1886, five days after the alleged conversations with Smith, shows that they then knew that Smith had not effected a settlement with Flannagan & Co., and nothing whatever thereafter occurred on the part of Smith or the manufacturing company to induce plaintiffs to consummate their trade with Flannagan & Co. The David Bradley Manufacturing Company was guilty of no fraud or deception towards plaintiffs, and there is no estoppel in the case. *Bales v. Perry,* 51 Mo. 454; *Kingman v. Graham,* 51 Wis. 232; *Douglass v. Cissna,* 17 Mo. App. 44, 62–63; *Acton v. Dooley,* 74 Mo. 63.

*Huston & Parrish,* for the respondent.

(1) The lower court did not err in admitting in evidence the statements of F. H. Smith. Because these statements were made while the agent Smith "was transacting the business of his principal and was a part of such transactions." He came there to adjust and arrange the Flannagan debt, in response to a letter written by plaintiffs, and what he said and did, in and about that matter while so engaged, were and are the acts and statements of the principal. This is elementary law and sustained by the very cases cited by appellant. (2) The lower court did not err in directing the jury to disregard the so-called indemnifying bond because : (*a*)

The evidence, without contradiction by defendant, showed that the makers of such bond were all non-residents of Putnam county, when such bond was executed. R. S., secs. 3023-4-5, p. 505; R. S., sec. 2366, p. 396; R. S., sec. 404, p. 64; R. S., sec. 2890, p. 485; R. S., secs. 465-6, p. 74. ( b ) The notice given by the claimants had fully accomplished its purpose and died when the constable released the property to them on the fifth day of March. The notice was given on the first day of March, the constable, in violation of law, held the property until the fifth, when it was released, and restored to the plaintiffs. This so-called bond of indemnity was not received or approved by the constable until the twelfth of March, and, after receiving it, he made a new levy, reseized the property. He received the bond and approved it when he did not have any property levied on, it had all been released seven days before. After the second levy no notice of claim was given. The former notice was dead and respondents had a perfect right to replevy the goods. R. S. 1879, secs. 3023-4-5, p. 505. ( c ) The policy, purpose and intention of the statute is simply to substitute a right of action against the bondsmen in lieu of that which the common law gave against the officer. It is simply intended as a transfer of responsibility, and should not be construed so as to make it an engine of oppression. See statute cited under " a." ( 3 ) The court did not err in giving plaintiffs' fifth instruction, nor in modifying defendant's first instruction : ( a ) Because neither the judgment nor execution ascertained, or adjudicated in any way, that they were for the purchase price of the goods levied upon. ( b ) Because the amount which was split up into all these small notes upon which judgment was rendered and executions issued was simply a general balance of account between Bradley & Co. and Flannagan & Co. ( c ) Because there was no proof made of the insolvency of Flannagan & Co. The statute is only a bar to exemption, does not create any lien,

simply prevents the purchaser from holding it exempt.
R. S., sec. 2353, p. 393.    If the vendee be solvent the
vendor has no right to compel payment of the purchase
price by a third party.    If "A" purchase a horse from
" B " who is worth ten thousand dollars, with the knowl-
edge that the horse is not paid for, could the original
vendor, without making any attempt to collect of " B,"
or showing that such attempt would be unavailing,
seize and sell the horse "A" had bought and paid for?
If so, then the statute creates a lien.    ( d )   Because the
estoppel pleaded in the reply was well sustained by the
testimony, and was properly submitted to the jury.
*Pelkenton v. Ins. Co.*, 55 Mo. 172; *Taylor v. Saugrain*,
1 Mo. App. 313; *Austin v. Loring*, 63 Mo. 19; *Turner
v. Baker*, 64 Mo. 218; *Guffy v. O' Reiley*, 88 Mo. 418.

SMITH, P. J.—This was an action of replevin, brought
by the plaintiff against the defendant, in the circuit
court of Putnam county, to recover certain specific per-
sonal property.

The petition was in the usual form.    The answer
admitted the possession, but denied the ownership of
the property.

It further alleges two separate defenses, one was
that the defendant being a constable, having in his
hands a number of executions, in favor of the David
Bradley Manufacturing Company, against L. K. Flan-
nagan & Co., levied the same upon, and took possession
of said personal property thereunder, and that there-
upon the plaintiff gave him notice that they claimed said
property, and that the defendant then demanded and
received of the said manufacturing company a bond of
indemnity, conditioned as required by statute, which
facts were pleaded in bar of plaintiffs' action.    And
the other defense was that the said judgments, upon
which the executions issued were for the unpaid pur-
chase price of the said property of which the plaintiff
had notice before their pretended purchase thereof.

The replication contained a general denial, and the plea of estoppel, in that said manufacturing company had informed plaintiffs that it had no claim on said property, and had requested them to purchase the same from Flannagan & Co., and that relying upon such assurances and request, they made purchase thereof.

The evidence at the trial tended to show that Flannagan & Co. were doing a hardware and implement business at Unionville, at the same time plaintiffs were engaged in a similar business there. Flannagan & Co., in August, 1886, proposed to sell out to plaintiffs at a lumping price.

The parties entered into a written agreement to that effect, after which plaintiffs wrote to all the creditors of Flannagan of their proposed purchase, and requested them, if they had any claims against Flannagan & Co., to send the same to them or send some one to represent them, so that they might be provided for. In response to this the creditors came and their claims were all adjusted, except that of the Bradley Manufacturing Company.

They had a contract with Flannagan & Co., whereby the implements not sold in the season of 1886 should be carried over to the next season, and as the selling season for such goods was then over, Flannagan wanted to get the benefit of this time. The Bradley Company sent as their agent in the business one F. H. Smith, when he arrived there was a conversation between him and the plaintiffs herein. They told him of their arrangement to purchase. Smith then had an interview with Flannagan, in the course of which he settled with him and took a note, payable in a short time for the amount of the claim.

About that time he told plaintiffs to go ahead with the trade, that he had settled with Flannagan, and would look to him for the money. This was about September 5, 1886. They then went on with the purchase. Smith helping them take an inventory, and they paid Flannagan twenty-five hundred dollars and executed two notes for

the balance, one for one thousand dollars and the other for fifteen hundred dollars, and took the goods. There was an arrangement made between Flannagan & Co., and Smith, by which the former was to pay the note given by them to the Bradley Company, and which was deposited in the bank for collection, out of the money he was to get out of the trade with plaintiffs.

Plaintiffs, before they paid their money or gave their notes, wrote Bradley & Co. a letter, inquiring on what terms they would enter into a new contract with them for the goods sold Flannagan, and what discount was allowed, etc., that they understood Smith had failed to make a settlement with him.

To this the reply was, that they had received no report from Smith yet, but had written him for immediate reply.

The testimony discloses that Flannagan did not pay Bradley & Co. all their claim out of the cash proceeds of the sale to plaintiffs.

In the spring of 1887, Smith again appeared in Unionville, and induced Flannagan, on surrender of the note for all the claim, to give, in lieu thereof, small notes within the jurisdiction of the justice, due at once, and on which suit was immediately brought, judgment obtained, and execution issued and levied on this property. The levy was made on the twenty-sixth of February; claim was made on the first of March.

The constable held the goods after he notified the Bradley Company of the claim five days; then not having received any word from them, he, on the fifth of March, released the goods from the levy and gave them up to plaintiffs, who held them until the twelfth of March. On that day, seven days after they were released, the constable received the bond and made a new levy, which on the return on some of the executions is dated the twelfth, and others the fourteenth day, and others the sixteenth day of March, 1887. After this second levy on the goods no claim was made, but

this suit was commenced to replevy the goods. It appeared in evidence that none of the makers of such alleged bond resided in Putnam county, but were all residents of St. Louis county at that time.

A number of instructions were given and refused, which will be noticed further on.

The jury found for the plaintiff, and, after the usual unsuccessful motions, judgment was rendered and defendant prosecuted his appeal therefrom to this court.

I. The first of the defendant's three grounds of appeal, is that the circuit court erred in admitting, in evidence over his objections, the statements of F. H. Smith. In this ruling we perceive no error. Smith was the accredited agent of the David Bradley Manufacturing Company, who had been especially interested with the negotiation and transaction of the very business, to which his statements related, and which statements were made while conducting the same. The statements of Smith to which exception is taken were part of the very business in which he was engaged for his principal, and therefore admissible.

The rule is that the declarations of an agent are admissible in evidence against his principal when a part of the transaction he is engaged in for his principal at the time. *McDermott v. Railroad*, 87 Mo. 285; *Gilman v. Railroad*, 13 Allen, 444; Story on Agency, secs. 134–135.

The said manufacturing company were written to by plaintiffs before the consummation of the sale, and delivery of the goods by Flannagan & Co. to plaintiffs, that if they had any claims against Flannagan & Co., to send their representative there that some arrangement might be made with it for settlement of the same, and that Smith, representing said manufacturing company, appeared upon the scene, when the plaintiffs informed him that they were about purchasing the Flannagan & Co. stock of goods, and requested to know of him

whether there was anything back on the same, they would like to arrange it with him, replied, "I will go and see Flannagan." After seeing Flannagan he returned and said, "We have settled with Flannagan for the goods, go ahead and buy them." There were, of course, a number of conversations between Smith and the plaintiffs during the various steps taken in respect to the negotiation of the sale of the goods, and the settlement of the claim with which Smith was entrusted, but they all relate to the one transaction of which they were a part, and must fall within the principle of the rule we have stated.

II.    The defendant contends that the circuit court erred in instructing the jury for the plaintiff, that the taking of the bond of indemnity by him was no defense.

The defendant made the levy on the property, and took and approved the indemnity bond on the same day.

The plaintiffs instead of making claim thereto, as provided by section 3023, Revised Statutes, brought this suit.    They had two concurrent rights, after the levy, one was to reclaim the property by an action of replevin, and the other was to give the notice provided by statute.

These were personal privileges—they could elect which remedy they would pursue.    If they desired to regain possession of their property, they could do so by resort to replevin, on the other hand, if they did not so desire its possession, they could give the statutory notice, and if the indemnifying bond was given as required by said section 3020, let the property sell, and then sue on the bond to recover the damages they had sustained.

The manufacturing company could not deprive the plaintiffs of the right to exercise their choice of remedies, by giving to defendant a bond of indemnity, when there was no statutory claim made to the property after the levy.    This right is conferred upon the party in possession of the property, and not upon him who is questioning his title and causing it, the property, to be

seized under execution. The fact that the constable may know that the person in possession of the property levied on claims an ownership in it, for that (the law presumes) does not justify him in voluntarily demanding of the execution creditor a bond of indemnity, or, if so, the same would not have the effect to authorize the seizure and detention of the property of the plaintiffs, or to shield him from the legal consequences of the same in an action of this kind. What proceedings may have taken place, as to other and prior levies, was wholly immaterial in this case.

The instruction was proper enough.

III. The defendant complains that the circuit court further erred in giving the plaintiffs' fifth instruction, which told the jury that although the manufacturing company sold the goods in controversy to Flannagan & Co., who may not have paid therefor, and that the judgments upon which the executions were issued, under which the same were seized, were rendered for such unpaid purchase money, yet if, before plaintiffs completed their purchase, plaintiffs wrote to said company of their intention so to do, and requested it to send some one to represent it in reference to any claim it might have against Flannagan & Co., and that in response thereto it did send Smith as its agent for such purpose, and that he, on being informed of the intention of the plaintiff to purchase said goods, then informed them, or any of them, that his company had settled with Flannagan & Co. for such goods, and looked to him for payment, making no objection to the purchase, but assisting plaintiffs in making an inventory, and that plaintiffs thereafter, relying on such statements, completed the purchase of the goods and paid for them in cash and notes, the jury should find for the plaintiffs.

Instruction number one asked by the defendant, and refused by the court in effect, told the jury that even if they did find the facts hypothecated in the preceding instruction, they should find for the defendant, if they

found further that the said judgments, on which the executions were issued and levied, were for the indebtedness for the purchase of said goods, and that the plaintiffs had knowledge of this before the purchase of said goods, and payment therefor, and that the said indebtedness had not been paid, for then the said levy and possession of defendant was lawful.

The court appended to this instruction the proviso "unless they further believed that the said manufacturing company, by its authorized agent, informed plaintiffs it had no claim upon the goods and induced plaintiffs to purchase them, upon the assurance it would look to Flannagan & Co. for its pay," and, thus amended, it was given. These two instructions by this modification of the court were brought into exact harmony, and as the estoppel was pleaded, and there was evidence adduced to support this theory, we cannot say this action of the court, in the giving of the one, or the refusing of the other, was erroneous.

We take it that while personal property under section 2353, Revised Statutes, is subject to execution on a judgment against the purchaser for the price thereof, except in the hands of an innocent purchaser for value, without notice of such prior claim, that where one who has notice of such prior claim desires to buy such property, and is informed by the execution creditor that arrangements have been made whereby he would look to the original purchaser and not to the property for such purchase money, and upon that the faith of such assurances, the property is bought and paid for, the buyer's position is not different from that of an innocent purchaser for value without notice—this is so upon principle.

Perceiving no error in the record prejudicial to the defendant, the judgment will be affirmed. All concur.